[No. 39935.    Department One.    July 18, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY LOE
NIBLACK *et al., Appellants.**

*Reported in 443 P.2d 809.

*Horrigan, Sullivan & McKinlay,* by *Edward H. McKinlay,* for appellants (appointed counsel for appeal).

*C. J. Rabideau,* for respondent.

Rosellini, J.—The defendants appeal from a judgment entered on a verdict of guilty of the crime of taking a motor vehicle without the permission of the owner. Their first contention is that they were denied a speedy trial and that their motion for dismissal, made on the day the case came up for trial, should have been granted.

According to the record, the defendants were arrested on June 2, 1967. They were arraigned June 16, counsel having been appointed on June 9, and entered pleas of not guilty. The court called the attention of counsel to the fact that the next jury term would begin in September and asked if a special jury panel would be requested. Although the defendants' counsel said that he might ask for a trial within the 60-day period provided by RCW 10.46.010, the record does not show that he ever made such a request, or that he in fact raised the objection that his clients had been denied a speedy trial until the day the trial was to begin.

▮ The defendants concede that this court has held that the fact that, for practical reasons, jury panels are not maintained during July and August, is good cause for not setting a case for trial within those months. It was so held in *State v. Jesse,* 65 Wn.2d 510, 397 P.2d 1018 (1965). In this case, the record shows that the trial court was willing to call a special panel, but none was requested. The trial was held one week after the fall term began, which the record shows was the earliest convenient date. There is no showing that an earlier date would not have been provided had the defendants made a timely request. By waiting until the day set for trial, they waived their right to a dismissal. *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967).

In their second assignment of error, the defendants assert that the trial court erred

In refusing to appoint a psychiatrist for the examination of defendant Hess, while subsequently permitting a

State psychiatrist to testify for the State, whose name was not on the Prosecutor's witness list.

The record shows that, on the application of the defendant Hess's attorney, concurred in by the prosecutor, the court entered an order on June 30, 1967, transferring the defendant Hess to the Western State Hospital for examination. He remained there until July 21, when he was returned to the Franklin County jail. The report of the examination, which was made to the trial court, with copies to defense counsel and to the prosecutor, showed that, although a personality or character disorder was found, there was no diagnosis of mental illness or of insanity.

The contention of the defendant Hess that he was insane was and is rested solely upon the fact that, in a criminal trial in a Colorado court in 1963, he was found to be criminally insane by a jury and was committed to the Colorado State Hospital. He subsequently escaped from that hospital and came to the state of Washington. Under Colorado law, in finding a defendant insane in a criminal proceeding, the jury may employ the "irresistable impulse" test, a test which is not considered valid in this jurisdiction. *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962).

The request for the appointment of a psychiatrist was made on behalf of the defendant Hess on September 15, 1967, 10 days before the date set for trial. He cites no authority for the proposition that he was entitled to have a psychiatrist appointed. In the affidavit accompanying his request, it was not alleged that he was then insane or mentally irresponsible. Nor was it said that he had been inadequately examined at the Western State Hospital or that the report issued by that institution was untrustworthy. Furthermore, there was no allegation of new facts which were not before the examining physicians at that hospital, the consideration of which might produce a different diagnosis.

■ We find no statute requiring a court to appoint a psychiatrist on the request of a defendant. We do, however, have a rule that the trial court may appoint a commission

to inquire into the sanity of a defendant where the issue of his sanity is raised. The rule is that the appointment of such a commission is within the discretion of the trial court. *State v. Biondic*, 47 Wn.2d 593, 288 P.2d 845 (1955); *State v. Miller*, 177 Wash. 442, 32 P.2d 535 (1934); *State v. Peterson*, 90 Wash. 479, 156 Pac. 542 (1916).

Here, the record shows that the trial court granted the defendant's application to be transferred to the Western State Hospital, that he was observed and examined over a period of time, and that a report was made, the reliability of which has not been challenged by the defendant. Under these circumstances, the trial court did not abuse its discretion in refusing to appoint another psychiatrist to examine the defendant Hess.

While the defendant Hess complains that the psychiatrist from the state hospital was permitted to testify on behalf of the state to rebut the presumption of insanity which he alleges arose from his introduction of evidence that he had been adjudicated criminally insane in Colorado, he concedes that the state is not required to furnish him a list of rebuttal witnesses. He suggests, however, that the state should have anticipated the fact that he would introduce evidence of his adjudication and commitment, and should have furnished him a list of the witnesses it would call in rebuttal to that evidence.

We are cited no authority for the proposition that the prosecutor must anticipate the evidence which a defendant will offer in support of his affirmative defenses and tender a list of the witnesses which it will call to rebut that evidence, nor are we given a rationale to support such a rule. In this case, the prosecutor was no better informed about the nature of the defendant's probable evidence than was the defendant about the identity of the prosecutor's probable rebuttal witness. The defendant had a copy of the hospital's report, and it showed on its face that it would be more useful to the prosecutor than to the defendant. He could reasonably assume that the examining psychiatrist would be called by the state if a rebuttal became necessary.

The defendant could hardly be heard to claim surprise, and in fact he does not make such a claim.

We find no merit in the contention that this witness should not have been permitted to testify.

The state's key witness was an itinerant worker, admittedly an alcoholic, who claimed to have been given a ride from Pasco to Walla Walla in the truck which was alleged to have been taken without the consent of the owner. Another witness, a service station attendant, was able to identify the defendant Niblack as the driver of the truck, but it was only upon the testimony of the witness Doak that the defendant Hess was implicated.

This witness described how the truck stopped when he signalled for a ride, how he sat between the two defendants and joined them in drinking wine as they drove to Walla Walla, stopping at one point to purchase gasoline. He testified that the defendant Niblack had to forcibly remove the gasoline cap in order to have the tank filled. He also testified that the truck was driven at an excessive rate of speed, and that he was afraid to ask to be allowed to get out of the truck, thinking the defendants would break the wine bottles over his head and throw him in a lake. According to the story told by the witness Doak, when the three reached Walla Walla, the truck was parked, and Doak got out of it and jumped into a pickup truck. The defendants, at this point, drove off in the truck, which was found later abandoned.

The defendants complain of prejudicial and inflammatory remarks made in the course of the testimony of this witness. They say that, by his testimony, they were accused of drunkenness, possible drunken driving, reckless driving, and assaults on two old men which, Doak said, occurred when one of the defendants was brought into the "drunk tank" where he was incarcerated. This last testimony was given in response to the prosecutor's question, "And when was the next time you saw the defendants?"

A number of cases have been cited in which we have held that the introduction of inflammatory and irrelevant

matter, which has a natural tendency to prejudice the jury, denies to the defendant a fair trial. The prejudicial effect of such testimony, we have said, may be so serious that it cannot be cured by an instruction to disregard it. The most recent of these decisions is *State v. Miles,* 73 Wn.2d 67, 436 P.2d 198 (1968). In that case a policeman, testifying for the state concerning the circumstances under which an arrest was made, said that he received a Teletype message saying that the defendants were headed for Spokane bent upon committing another crime like the one they had allegedly committed in Grandview.

We pointed out that this testimony was not relevant or necessary to prove an ingredient of the crime charged, that from it the jury might infer a knowledge on the part of the police that the defendants had committed other crimes of this nature, and that it was therefore grossly prejudicial, requiring the granting of a new trial.

In *State v. Suleski,* 67 Wn.2d 45, 406 P.2d 613 (1965), a great deal of evidence pertaining to the crime of possession of burglary tools, with which the defendant was charged, was admitted in a trial in which he also defended against a charge of attempting to obtain narcotic drugs by fraud and/or alteration of a prescription. The trial court struck all of the evidence of possession of burglary tools before the case was submitted to the jury. We held, however, that the prejudicial effect of this evidence could not be erased and was bound to have colored the verdict. It was clear in that case that the evidence about the defendant's possession of burglary tools had no relevance to his alleged acts in attempting to obtain narcotics by fraud, deceit, misrepresentation or subterfuge and/or alteration of a prescription.

In *State v. Dinges,* 48 Wn.2d 152, 292 P.2d 361 (1956), witnesses were permitted to testify about an alleged burglary unconnected with the crime of illegal possession of narcotics, for which the defendant was tried. A new trial was ordered.

However, in the case of *State v. Sedam,* 46 Wn.2d 725, 729, 284 P.2d 292 (1955), we said:

[P]roper evidence is not to be excluded because it may also tend to show that the accused has committed another crime, unrelated to the one for which he is being tried. [Citing cases.] The test is, does the questioned evidence tend to establish (1) motive, (2) intent, (3) absence of accident or mistake, (4) a common scheme or plan, or (5) identity. *State v. Hartwig*, 45 Wn. (2d) 76, 78, 273 P. (2d) 482 (1954).

In that case, we held that it was proper to show, in a prosecution for grand larceny, other attempts to defraud, as tending to prove motive, intent, and a common scheme or plan. The offered evidence was held inadmissible on a slightly different set of facts in *State v. Hartwig*, 45 Wn.2d 76, 273 P.2d 482 (1954), cited in that opinion. In that case this court found that the evidence of prior misrepresentations was irrelevant when it was not offered for the purpose of showing intent or any of the other factors listed above.

■ There is another class of cases in which evidence of misconduct of the defendant may be received. That class includes cases which involve other criminal acts which are an inseparable part of the whole deed. *State v. Priest*, 132 Wash. 580, 232 Pac. 353 (1925); *State v. Conroy*, 82 Wash. 417, 144 Pac. 538 (1914); *State v. McDowell*, 61 Wash. 398, 112 Pac. 521 (1911); 1 J. Wigmore, Evidence § 218 (3d ed. 1940); 29 Am. Jur. 2d *Evidence* § 321 (1967).

Such evidence is not open to the objections which justify exclusion of other unrelated crimes. It does not raise the possibility that the jury will condemn the defendant, although he is innocent of the act charged, because it is prejudiced by his former crimes; and the defendant cannot claim surprise, because the misconduct is an integral part of the crime charged.

In the case now before the court, all of the evidence which the defendants find objectionable was given in the testimony of the state's key witness, whose only contact with the defendants was in connection with the alleged crime. He described his experience in riding with the defendants in the motor vehicle in question on the day that it was taken. Except for his testimony about one of the

defendants when he joined the witness in jail, it concerned the circumstances of the crime charged and was admissible under the rule allowing such evidence when it is an inseparable part of the whole deed. The fact that the driver exceeded the speed limit would also have some probative value in showing that he knew the vehicle had been taken without the permission of the owner and was admissible for this reason as well.

The testimony concerning the alleged attack by one of the defendants on two inmates of the jail was volunteered. It was not needed to prove that the witness recognized the defendant when he was brought into the "drunk tank."

In the recent case of *State v. Johnson*, 60 Wn.2d 21, 371 P. 2d 611 (1962), we observed the fact that the state cannot pick and choose its witnesses and sometimes must rely on persons who are either too ignorant or too malicious to confine their answers to the scope of the questions asked them, and stated the rule to be that irresponsive remarks of a witness will not necessarily make a new trial mandatory. Rather, we said, if a witness makes an inadvertent or irresponsive remark which the jury is instructed to disregard, but which so taints the entire proceedings that a fair trial is denied the defendant, then a new trial must be ordered.

On motion of the defendants in this case, the trial court instructed the jury to disregard any evidence of conduct relating to other possible offenses and to consider nothing but the evidence relating to the crime of taking a motor vehicle without the consent of the owner. The testimony that one of the defendants (who was not identified by the witness) made an assault upon two old men in the jail showed that that defendant was belligerent when intoxicated; but it can hardly be assumed that a jury of reasonable men would conclude that, because of this tendency, he was probably also inclined to steal. It is also doubtful that the witness' credibility was bolstered by this remark. If the jury had not already accepted his story as essentially true, there is little likelihood that it was influenced to

change its opinion of his veracity on the basis of this hostile remark.

We conclude that any prejudice engendered by this testimony was cured by the court's instruction to disregard it.

■ The defendant Hess urges that the trial court erred in instructing the jury that a defendant is presumed sane until the contrary is shown by competent proof. He claims that he rebutted this presumption, as a matter of law, when he placed in evidence documents showing an adjudication of insanity rendered by a Colorado court. No authority is cited for this proposition. The fact that the defendant offered evidence of such an adjudication in support of his defense did not change the applicable law, and the trial court correctly instructed the jury concerning the burden of proof.

There is finally a contention on the part of the defendants, not concurred in by their counsel, that the trial court was prejudiced against them. They base this contention on the fact that, at one point, the court admonished them, in the absence of the jury, concerning their conduct in the court-room. There is no showing that the admonition was unwarranted and there is nothing in the record to indicate that the court manifested any prejudice, in its rulings or in its conduct of the trial.

We find no error in the record and are convinced that the defendants were given a fair trial.

The judgment is affirmed.

HILL, HALE, and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur.