[No. 7814-7-II.  Division Three.  June 5, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. TED L. BROWER, *Appellant.*

---

*Ted L. Brower,* pro se, and *Robert A. Izzo,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Teresa Jordan, Deputy,* for respondent.

Munson, J.*—Ted L. Brower appeals his conviction for second degree assault. He contends: (1) the trial court erred in admitting evidence of a cocaine transaction between Claudia Hoyt and Richard Murray Murphy, because its probative value was outweighed by the possibility of undue prejudice; (2) the warrantless search of his truck for weap-

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

ons was unlawful under article 1, section 7 of our constitution; (3) he was denied a fair trial because the State introduced certain inflammatory and irrelevant evidence; (4) an aggressor instruction to the jury was not supported by any factual basis in the record; and (5) the trial court erred in ordering the forfeiture of his .45 caliber handgun under RCW 9.41.098. In his pro se brief, Mr. Brower asserts his right to remain silent was violated when the State cross-examined him concerning the omission of certain specific facts in his postarrest statement to police, and his attorney ineffectively represented him at trial. We reverse and remand for a new trial.

On January 16, 1984, Mr. Brower was charged by amended information with second degree assault, RCW 9A.36.020(1)(c), in connection with an incident on September 13, 1983, in which he allegedly assaulted Frederick Martin with a .45 caliber handgun. Sometime prior to the incident, Mr. Brower had loaned his pickup truck to Claudia Hoyt so she could find an apartment in Olympia. Miss Hoyt had been living at his residence during the past 3 months. Around 5:30 p.m. on September 12, she telephoned Mr. Brower in Oak Harbor and advised him she would be unable to return the truck that day, as planned, because it had been impounded. When Mr. Brower was unable to confirm this with the Olympia Police Department, he became concerned. When his 16–year–old daughter arrived at his house about 9 p.m. with her boyfriend, Richard Murray Murphy, she advised her father Miss Hoyt had mentioned to her she might steal a vehicle and go to California.

Later that evening, Mr. Brower decided to go to Olympia to retrieve his truck. The Olympia Police Department had indicated the vehicle could not be reported stolen because it had been loaned. Mr. Murphy was similarly concerned about Miss Hoyt's intentions because she had 7.5 grams of cocaine they had purchased and which she agreed to sell in Olympia. Mr. Murphy accompanied Mr. Brower to recover his cocaine.

Because Messrs. Brower and Murphy feared Miss Hoyt or her friends might be armed, the two men decided to take their handguns. Mr. Brower had a concealed weapon permit; Mr. Murphy did not. Both men agreed the guns would only be used as a last resort.

Mr. Brower, his daughter, two other juvenile females, and Mr. Murphy left Oak Harbor around 11:30 p.m. and arrived at Miss Hoyt's apartment at approximately 1:30 a.m. Miss Hoyt, Mr. Martin, and a male occupant of the apartment were present at the time. Mr. Brower obtained the keys to his truck without incident. The truck had, in fact, been impounded, but was released sometime after Miss Hoyt telephoned Mr. Brower.

While waiting for his companions, Mr. Brower watched television. The three girls collected some clothing that belonged to one of them then went downstairs to remove Miss Hoyt's possessions from the truck. Mr. Murphy confronted Miss Hoyt about the cocaine which she later gave him; he refused to give her any of the cocaine.

Mr. Martin, who overheard their conversation, did not think this was fair and interceded on behalf of Miss Hoyt. Although Miss Hoyt told Mr. Martin not to pursue the matter, he became agitated and wanted to settle the matter outside with Mr. Murphy. When Messrs. Brower and Murphy were leaving, Mr. Martin followed them down the apartment stairs. Although Mr. Martin later testified he was upset, he denied making any threatening movements toward the men.

After Mr. Murphy passed Mr. Brower on the stairs, Mr. Brower turned, stuck his .45 caliber revolver in Mr. Martin's stomach, and told him to go back up to the apartment. Mr. Martin had not had any previous dispute with Mr. Brower until this time. Mr. Murphy was not aware Mr. Brower had pulled a gun; he was already outside the apartment building at the time of the alleged assault. Messrs. Brower and Murphy left in the truck; the three girls had left shortly before in the car used to get them to Olympia.

Returning to the apartment, Mr. Martin notified police

about the assault and the cocaine, giving a description of the suspects and their vehicles. Both vehicles were later stopped by police at the same location on Interstate 5; Mr. Brower and Mr. Murphy were taken into custody. The handguns were seized from the truck.

At trial, Mr. Brower testified he pulled his gun in self–defense, claiming Mr. Martin acted aggressively when coming downstairs toward him; he drew his revolver only after he thought he saw a shiny object, possibly a knife, in Mr. Martin's hand. The jury found Mr. Brower guilty; by special verdict, he was found to be armed with a firearm at the time of the assault. Following the entry of judgment and sentence and denial of defendant's motion for new trial, this appeal was filed. Additional facts are set out below as they relate to the issues.

Initially, Mr. Brower challenges the admission of testimony of the cocaine transaction. Prior to trial, the State sought clarification from the court as to whether all references to the cocaine transaction would be excluded in light of its previous ruling suppressing the cocaine seized during the second search of the defendant's truck.[1] *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983). Defense counsel had stated, when arguing a separate matter, that she intended to elicit the facts surrounding the attitudes of certain State's witnesses about the defendant, including the "drug deal" between Mr. Murphy and Miss Hoyt, which "went sour."

In responding to the State's request for a clarification, the court stated:

My problem is whether it is inflammatory or not. If that is their allegation, if you are going to establish this transaction, it doesn't seem that that would be grounds,

---

[1]Under the original information filed against the defendant on September 15, 1983, he was charged with unlawful possession of a controlled substance, RCW 69.50.401, in connection with the cocaine seized from his truck after police had conducted an initial search of the vehicle for weapons. This charge was dismissed after the cocaine was suppressed. A first degree robbery charge was also dismissed prior to trial.

whether you use the term "alleged cocaine". If this is the fact pattern that develops, the Court doesn't find that that would be grounds to not mention or keep out any reference to it. You could call it white powder.

. . .

If there is really a motion, if this motion is going to go beyond the motion that was made when we dismissed Count One of the Third Amended Information [*i.e.*, first degree robbery], the Court does not feel under those circumstances it is going to suppress the reference to alleged cocaine, if that is going to be a matter.

At this time I don't see any reason why it would be kept out.

. . .

There will be no mention whatsoever of the fact that cocaine or alleged cocaine was found in the truck. That is suppressed.

Thereafter, defense counsel acknowledged references to the cocaine transaction could not be avoided:

It strikes me that we are at this point going to be trying a Second Degree Assault case on an individual named Fred Martin, and that which allegedly occurred on a stairwell. I would say if Mr. Murphy and Ms. Hoyt are are still going to be testifying that obviously their dealings with one another are going to have to be delved into. That will include that fact that the pair of them conspired together to purchase cocaine.

I would agree that it should come in so long as it's confined to their dealings; and obviously that the seizure in my client's vehicle does not come in.

The court again stated this evidence was excluded; defense counsel continued:

Obviously I'm going to have to deal with Ms. Hoyt and Mr. Murphy's relationship with one another. That is unfortunately going to be coming in with the cocaine. I just want to say that for that purpose and that purpose only it would be appropriate.

■ On appeal, Mr. Brower challenges the admission of evidence of the cocaine transaction, claiming the court failed to articulate whether the inflammatory nature of the evidence was outweighed by its probative value. *See* ER 403. Assuming this contention was not effectively waived by

counsel's remarks at trial, it is clear the facts surrounding the drug deal were an inseparable part of events leading to the alleged assault. As stated in *State v. Tharp,* 96 Wn.2d 591, 594, 637 P.2d 961 (1981):

[T]he uncharged crimes were an unbroken sequence of incidents tied to Tharp, all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening. Each crime was a link in the chain leading up to the murder and the flight therefrom. Each offense was a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury. *See* E. Cleary, [*McCormick on Evidence* § 190,] at 448 & n.34, 451 n.46 [(2d ed. 1972)].

*See also State v. Jordan,* 79 Wn.2d 480, 482–83, 487 P.2d 617 (1971); *State v. Niblack,* 74 Wn.2d 200, 204–07, 443 P.2d 809 (1968); *State v. Hatch,* 63 Wash. 617, 618–19, 116 P. 286 (1911); *State v. Burton,* 27 Wash. 528, 532, 67 P. 1097 (1902); 5 K. Tegland, Wash. Prac., *Evidence* § 115 (1982).

Further, Mr. Brower can hardly claim prejudice since it was to his advantage to provide the jury with the whole picture surrounding his claim of self–defense and to discredit Mr. Murphy's and Miss Hoyt's testimonies in terms of their misconduct. There is also sufficient evidence in the record indicating the trial court considered the possible "inflammatory" nature of the testimony before allowing its admission. *See State v. Bockman,* 37 Wn. App. 474, 491, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984).

Throughout the trial, witnesses indicated Mr. Brower was not a party to the drug deal. Even if the evidence of his knowledge of the illicit transaction could be interpreted as indicating other criminal activity on his part, the slight possibility of prejudice was clearly outweighed by the need to provide the jury with the total picture of events surrounding the crime charged. *Jordan,* at 483; *Niblack,* at 204–07; *Hatch,* at 618–19. Thus, the court did not err in admitting references to the drug transaction.

Mr. Brower next contends the initial warrantless search

of his truck for weapons was unlawful under article 1, section 7 of our constitution. We disagree. Prior to trial, the defense moved to suppress the cocaine seized from Mr. Brower's truck during a second warrantless search of the vehicle; the previous search for weapons was not challenged. Defense counsel stipulated this initial search was valid as a search incident to arrest. In so doing, she referred to facts outlined in certain police reports, which have not been included in the record on appeal. *Cf. Heilman v. Wentworth,* 18 Wn. App. 751, 754, 571 P.2d 963 (1977), *review denied,* 90 Wn.2d 1004 (1978) (the appellate court is not required to order preparation of the record substantiating an assignment of error). The only record before this court concerning the initial search for weapons is contained in one of the arresting officer's testimony at trial.

Assuming this issue has not been waived, *see State v. Silvers,* 70 Wn.2d 430, 432, 423 P.2d 539, *cert. denied,* 389 U.S. 871, 19 L. Ed. 2d 152, 88 S. Ct. 156 (1967); *State v. Woods,* 5 Wn. App. 399, 402, 487 P.2d 624 (1971); *cf. State v. Valladares,* 99 Wn.2d 663, 672, 664 P.2d 508 (1983) (withdrawal of a motion to suppress constitutes abandonment of the issue for purposes of appeal), the record on appeal indicates the arresting officers were at risk when the search for weapons was conducted; the occupants of the car still posed a possible threat even though the defendant and Mr. Murphy had been removed from the truck. Thus, the search was proper as a search incident to arrest. *State v. Ringer, supra.*

Next, Mr. Brower argues the State's introduction of certain inflammatory and irrelevant evidence denied him his right to a fair trial. As previously stated, evidence of the cocaine transaction was properly admitted; the seizure of the handguns from the truck is also not subject to challenge. Although the defense objected to the marking and identification of Mr. Murphy's .38 caliber revolver and the court later declined to admit it on the basis of relevancy, Mr. Murphy had already testified without objection he and the defendant were armed at the time of the assault. *See*

*State v. Robinson,* 4 Wn. App. 515, 519, 483 P.2d 144 (1971). Hence, the marking and identification of Mr. Murphy's gun was harmless at best.

Mr. Brower also asserts the trial court erred in submitting an aggressor instruction to the jury. The following instruction was given over the defendant's objection:

> No person may by any unlawful act create a necessity for acting in self–defense or defense of another and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self–defense is not available as a defense.

A similarly worded instruction,[2] based upon Washington Pattern Jury Instructions, WPIC 16.04, was held improper in *State v. Arthur,* 42 Wn. App. 120, 708 P.2d 1230 (1985). The court reversed the conviction for second degree assault because (1) there was no evidence the defendant engaged in any unlawful act which might have precipitated the assault, and (2) the vague language of the instruction permitted the jury to speculate and conjecture as to the lawfulness of his conduct so as to deprive him of his theory of self–defense.

Aggressor instructions in various forms have been permitted in cases where the defendant claims self–defense and there is evidence his wrongful or unlawful acts provoked the affray or deadly conflict. *See, e.g., State v. Currie,* 74 Wn.2d 197, 199, 443 P.2d 808 (1968); *State v. Turpin,* 158 Wash. 103, 113, 290 P. 824 (1930); *State v. Hawkins,* 89 Wash. 449, 455, 154 P. 827 (1916); *State v. McConaghy,* 84 Wash. 168, 170–71, 146 P. 396 (1915); *State v. Sampson,* 40 Wn. App. 594, 599–600, 699 P.2d 1253, *review denied,* 104 Wn.2d 1005 (1985); *State v. Heath,* 35 Wn. App. 269, 271, 666 P.2d 922, *review denied,* 100 Wn.2d 1031 (1983); *State v. Bailey,* 22 Wn. App. 646, 650–51, 591 P.2d 1212 (1979); *State v. Upton,* 16 Wn. App. 195, 204,

---

[2]The only difference in language is the inclusion of the phrase "or defense of another".

556 P.2d 239 (1976), *review denied,* 88 Wn.2d 1007 (1977). But an instruction on an issue or theory unsupported by the evidence is improper. *Upton,* at 204.

Here, there is no indication Mr. Brower was involved in any wrongful or unlawful conduct which might have precipitated the incident with Mr. Martin. Although he armed himself prior to going to Miss Hoyt's apartment, he had a permit to carry the handgun; nor is there evidence he displayed the weapon until the time of the alleged assault. He retrieved the keys to his truck without incident; he was not involved in the dispute over the cocaine between Messrs. Murphy and Martin or Miss Hoyt. If Mr. Brower was to be perceived as the aggressor, it was only in terms of the assault itself. Under the facts of this case, the aggressor instruction was improper. *Upton,* at 204. The inclusion of the instruction effectively deprived him of his theory of self–defense; the jury was left to speculate as to the lawfulness of this conduct prior to the assault. *State v. Arthur, supra.*

Mr. Brower also contends the court erred in ordering the forfeiture of his handgun. The record indicates the defendant was given notice of the forfeiture hearing and had the opportunity to be heard. *See generally Crape v. Mount,* 32 Wn. App. 567, 648 P.2d 481, *review denied,* 98 Wn.2d 1008 (1982). Pursuant to RCW 9.41.098(1)(c), the court had authority to order the forfeiture of the firearm.[3] However, because the conviction was improper in terms of the aggressor instruction, the order of forfeiture must, likewise, be reversed.

---

[3]RCW 9.41.098(1) provides in part:

"The superior courts and the courts of limited jurisdiction of the state may order forfeiture of a firearm which is proven to be:

". . .

"(c) Found in the possession or under the control of a person at the time the person committed or was arrested for committing a crime of violence or a crime in which a firearm was used or displayed or a felony violation of the uniform controlled substances act, chapter 69.50 RCW;"

Mr. Brower raises two additional issues in his pro se brief: (1) was his right to remain silent violated when the State cross–examined him concerning his postarrest statement to police; (2) was he denied effective assistance of counsel. We do not address the latter issue in light of our determination above.

Following his arrest, Mr. Brower was advised of his *Miranda* rights and acknowledged he understood those rights. When asked by Detective Paul Johnson of the Olympia Police Department whether Mr. Brower wished to waive his *Miranda* rights, Detective Johnson stated: "He wanted to give his version of the story. He didn't want to answer any specific questions." *Cf. North Carolina v. Butler,* 441 U.S. 369, 375–76, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979) (an express statement of waiver is not indispensable to a finding of waiver). Mr. Brower then advised the officer he had acted in self–defense: "Fred Martin, approached him quote in an aggressive manner." Mr. Brower made no mention of any verbal hostilities that took place between him and the alleged victim on the stairs or that he thought Mr. Martin had a knife at the time of the assault.

After giving his statement, Mr. Brower no longer wished to talk and asked to speak to an attorney. The interrogation ceased; Detective Johnson had no further contact with the defendant.

At trial, Mr. Brower testified Mr. Martin had made certain threatening remarks when coming down the stairs; as he turned toward Mr. Martin he thought he saw a knife in Mr. Martin's hand. On cross examination, the prosecutor questioned Mr. Brower about the fact he neglected to mention these particular facts to Detective Johnson when making his postarrest statement. The obvious purpose of the questioning was to raise the inference of recent fabrication; the prosecutor's cross examination cannot be perceived as a comment upon a defendant's postarrest silence because Mr. Brower voluntarily chose to give a statement to police. In short, his right to remain silent was not violated.

904

The conviction and order of forfeiture are reversed; the case is remanded for new trial.

MCINTURFF, A.C.J., and THOMPSON, J., concur.