[Nos. 28476-6-II; 29156-8-II. Division Two. September 21, 2004.]

THE STATE OF WASHINGTON, *Appellant*, v. JOSHUA MATTHEW WINGATE, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney,* and *Kevin A. McCann* and *John M. Neeb, Deputies,* for appellant.

*Suzanne L. Elliott,* for respondent.

HUNT, J. — The State appeals an exceptional sentence downward for Joshua Wingate's first degree and second degree assault convictions, arguing that the trial court abused its discretion. Wingate cross-appeals, arguing that (1) the trial court erred by giving a "first-aggressor" instruction; (2) he received ineffective assistance of counsel; (3) there was insufficient evidence to support the first degree assault conviction; (4) there was no evidence to support his second degree assault convictions; and (5) the prosecutor committed misconduct by arguing facts outside the record.

Holding that the facts did not warrant the first-aggressor instruction, we reverse.

## FACTS

### I. THE ASSAULTS

On June 21, 2001, Stephen Park discovered that his good friend, James Koo, was dating Park's former girl friend, Elizabeth Kim. Park called Koo and told him he was "[c]oming down" to Koo's house to confront him about his involvement with Kim. Three of Park's friends, Joseph Feist, Chad Scott, and Marco Poydras, followed Park to

Koo's house. Park had in mind that he might get into a fight with Koo.

Wingate had been at an internet café playing computer games with friends. A friend told Wingate that Park was going to Koo's house "to pick a fight over Elizabeth." Wingate, who had a concealed weapons permit, took his handgun and went to "see what was going on" at Koo's house. Wingate knew of Park's reputation for violence and using weapons. When Wingate arrived, only Koo was present.

When Park arrived, there were approximately 10 to 15 people at Koo's house. According to Wingate, Park pulled a sawed-off shotgun from the trunk of his car, cocked it, and put it back into the trunk, leaving the trunk lid open.

Koo saw Park "pump" something from his trunk and put something in his back pocket before leaving his car to pursue him (Koo). Park denied having a shotgun or any other weapon. Nonetheless, Koo believed that Park intended to shoot him. When Koo refused to face Park or to let Park confront him, Park became frustrated and began chasing Koo around a truck parked in Koo's driveway. When Kim tried to stop Park, he pushed her to the ground.

Wingate saw Feist, Scott, and Poydras standing by Park's car while Park was chasing Koo; Wingate thought the three men were "guarding" Park's open trunk and the sawed-off shotgun inside. Believing that Park was "getting out of control," Wingate approached the three men guarding Park's trunk, pulled out his gun to scare them so he could retrieve Park's shotgun and remove it from Park's reach, and told them to move away from the car. After the trio obliged, Wingate removed the shotgun from Park's trunk.

Park saw Wingate pointing a gun at his three friends, went over to the car, and challenged Wingate. Feist pulled a large black gun from his waistband. Wingate threatened to shoot if Feist did not drop the gun; Feist put his gun in Park's still-open trunk, and Wingate's friend took Park's shotgun from Wingate. Wingate pointed the gun at Park's

chest, told Park that he (Park) and his friends were "acting like a bunch of little kids," and explained that Koo did not want to fight. Park retorted that the matter was none of Wingate's business.

Park understood that Wingate was pointing the gun at him in an attempt to persuade him to leave Koo alone and to leave the scene. But instead of leaving, or at least retreating, Park advanced toward Wingate, taunting, "What are you going to do? You going to shoot me?" Thinking that Park was pulling a gun from the back of his waistband,[1] Wingate lowered his gun away from Park's chest and shot him in the leg.[2] According to Wingate, he was trying to prevent a shooting, but Park had brought a shotgun, his friend had just put another gun in Park's trunk, and the four men outnumbered Wingate, leaving Wingate few options.

## II. PROCEDURE

The State charged Wingate with one count of first degree assault, for shooting Park in the leg, and three counts of second degree assault, for pointing his gun at Park's three companions, with mandatory firearm sentencing enhancements for all counts.

### A. Trial

Feist and Scott, who had witnessed Wingate shoot Park in the leg, did not testify at trial. The State proposed a first-aggressor instruction, which the trial court permitted over defense counsel's objection.

In closing, the prosecutor argued:

> Now, I have a friend who teaches firearm safety courses, and she helped me understand this legal concept of self-defense by

---

[1] Wingate admitted at trial that he never actually saw Park with a gun after he (Wingate) removed the cocked shotgun from Park's trunk. And Park testified that after Wingate shot him, Wingate turned to Park's friends and asked, "Who else wants some?"

[2] The bullet passed through Park's upper thigh within four centimeters of Park's femoral artery.

putting it into a sort of rhyme. The rhyme goes like this: "It was all that I could do. You would do it too if you knew what I knew." I encourage you to compare that to the legal instruction, and I submit to you that you'll find that that rhyme is an accurate statement of the law. "It was all that I could do. You would do it too if you knew what I knew."

Report of Proceedings (RP) (Dec. 4, 2001) at 15. Rebutting defense counsel's closing argument that neither Feist nor Scott had testified, the prosecutor stated that Feist was unavailable because he was in the military and that Scott had moved to Louisiana.

The jury convicted Wingate on all counts except count II, the assault against Poydras, the only one of Park's three companions who did testify. The jury returned a special verdict on the three convictions, finding that Wingate was armed with a firearm at the time of the assaults.

### B. Exceptional Sentence

At sentencing, the parties agreed that the standard range for the combined charges was 261 to 303 months in prison.[3] The State asked the trial court to impose a sentence at the high end of the standard range; Wingate asked for the low end. The trial court imposed a sentence below the standard range, for a total of 120 months, running the firearm enhancements concurrently.[4]

The trial court found four mitigating factors: (1) Park was the initiator, or at least a willing participant; (2) Wingate

---

[3] RCW 9.94A.540(1)(b) provides a minimum term of 60 months for first degree assault.

[4] Broken down, the 120-month sentence was as follows:

The assaults: Count I, first degree assault on Park, 60 months; Counts II and IV, second degree assault on Feist and Scott, 20 months each. The court ran these sentences concurrently, resulting in a total of 60 months for the underlying offenses.

The firearm enhancements: Count I, 60 months; Counts II and IV, 36 months each, all to run concurrently, for a total of 60 months confinement for the firearm enhancements.

acted under duress or coercion, even though the jury had rejected his self-defense claim; (3) Wingate displayed extreme care for Park's well-being in shooting Park in the leg when he could have shot him in the chest and killed him; and (4) the multiple offense policy would result in a clearly excessive presumptive range.

The State moved to reconsider, arguing that the trial court was required to run the weapon enhancements consecutively. The trial court declined to reconsider the exceptional sentence below the standard range.[5] But, agreeing with the State, it reluctantly corrected Wingate's sentence to run the firearm enhancements consecutively. In light of the resultant, statutorily required increase in Wingate's sentence to 16 years (192 months) total confinement,[6] the trial court noted for the record, "[T]he amount of time that Mr. Wingate is having to serve on this, although required by statute, is not just." RP (May 10, 2002) at 80.

The State appeals the exceptional sentence, and Wingate cross-appeals. We focus first on Wingate's cross-appeal issues.

## ANALYSIS

At the outset, we reject Wingate's argument that the evidence is insufficient to support his convictions. We find persuasive, however, his argument that the first-aggressor instruction was error under the facts here because it denied Wingate the ability to argue his theory of self-defense.

■ We review jury instructions generally to determine whether they permit each party to argue his theory of the case and properly inform the jury of the applicable law.

---

[5] The trial court entered written findings of fact and conclusions of law for the exceptional sentence and reiterated the mitigating factors it considered when issuing the original sentence. Clerk's Papers at 67-72.

[6] The revised 192-month sentence broke down as follows:

The original 60-month sentence on the underlying offenses remained unchanged, but the court was forced to run the two 36-month firearm enhancements consecutively, totaling 132 months for the consecutive firearm enhancements.

*State v. Bowerman*, 115 Wn.2d 794, 809, 802 P.2d 116 (1990).

## I. "First-Aggressor" Instruction

The State requested, and the trial court gave, the following first-aggressor instruction, over Wingate's objection:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self defense or defense of another and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense or defense of another is not available as a defense.

Instruction 16, Clerk's Papers (CP) at 24.

██ ██ The defendant bears the initial burden of producing some evidence that his actions occurred in circumstances amounting to self-defense, such as a reasonable apprehension of great bodily harm and imminent danger to himself or to another. *See State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993).

The defendant need not, however, show actual danger. Rather, it is sufficient that the defendant reasonably believed that he, or another, was in danger of imminent harm. *See State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996). In making this determination, the jury must assess the self-defense evidence from the perspective of a reasonably prudent person standing in the defendant's shoes, knowing all the defendant knows and seeing all the defendant sees. *Janes*, 121 Wn.2d at 238.

 Nonetheless, a defendant whose aggression provokes the contact eliminates his right of self-defense. Thus, a first-aggressor instruction is appropriate when there is credible evidence that the defendant provoked the use of force, including provoking an attack that necessitates the defendant's use of force in self-defense. *State v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999). A first-aggressor

instruction is proper when the record shows that the defendant is involved in wrongful or unlawful conduct before the charged assault occurred. *State v. Brower*, 43 Wn. App. 893, 721 P.2d 12 (1986). The record before us does not show that Wingate was involved in any wrongful or unlawful conduct when he pointed his gun at Park in an attempt to keep Park from harming Koo. *State v. Craig*, 82 Wn.2d 777, 783, 514 P.2d 151 (1973).

Here, even Park acknowledged that before Wingate shot him, Wingate was trying to persuade Park and his friends to leave and to stop threatening Koo. In addition, there is evidence in the record that shows Wingate was retreating while he was pointing his gun at Park. Wingate testified that Park was advancing and appeared to Wingate to be drawing another weapon (after Wingate had earlier removed Park's shotgun from his trunk). Thus, the evidence does not support giving an initial aggressor instruction. The question of whether Wingate acted lawfully in self-defense when he shot Park remains for the jury.

As our Supreme Court has noted, first-aggressor instructions should be used sparingly:

"[F]ew situations come to mind where the necessity for an aggressor instruction is warranted. The theories of the case can be sufficiently argued and understood by the jury without such instruction." *State v. Arthur*, 42 Wn. App. 120, 125 n.1, 708 P.2d 1230 (1985). While an aggressor instruction should be given where called for by the evidence, an aggressor instruction impacts a defendant's claim of self-defense, which the State has the burden of disproving beyond a reasonable doubt. Accordingly, courts should use care in giving an aggressor instruction.

*Riley*, 137 Wn.2d at 910 n.2.

The last sentence of the first-aggressor instruction prevented the jury's consideration of Wingate's self-defense claim, or defense of Koo, if they found that Wingate's "acts and conduct provoked or commenced the fight." The record does not show (1) that Wingate was involved in any wrongful or unlawful conduct before the incident for which the State charged him; or (2) that his conduct precipitated the

fight with Park so as to warrant giving a first-aggressor instruction. *Riley*, 137 Wn.2d at 907. We hold, therefore, that in effectively precluding the jury's consideration of Wingate's self-defense claim, the aggressor instruction prevented Wingate from receiving a fair trial. Accordingly, we reverse.

## II. REMAINING ISSUES

Because we reverse and remand for a new trial, we do not address the following issues: the propriety of the exceptional sentence;[7] ineffective assistance of counsel; and prosecutorial misconduct.

Reversed.

QUINN-BRINTNALL, C.J., and HOUGHTON, J., concur.

Reconsideration denied October 28, 2004.

---

[7] Although we need not reach the exceptional sentence issue, we do recognize that there were mitigating circumstances here that could justify an exceptional sentence downward. RCW 9.94A.535(1)(a) allows a trial court to deviate from a standard sentence if it finds certain mitigating factors warrant such a departure. One of the statute's mitigating circumstances permitting an exceptional sentence downward is when "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a).