IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35716-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRIAN LEE HALL, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Brian Hall appeals his conviction for first degree murder, arguing his guilty verdict was tainted by an improper initial aggressor instruction. We disagree and affirm.

FACTS

After months of trading both threats and acts of violence, Brian Hall shot and killed Demetrius Dennis on December 26, 2015. Mr. Hall had known Mr. Dennis for a few years and was wary of him due to conflicts between Mr. Dennis and Mr. Hall's son. Things worsened after Mr. Dennis began dating and later fathered a child with Mr. Hall's former girlfriend, Melissa Wilson.

In October 2015, shortly before Ms. Wilson gave birth, Mr. Hall slashed the tires on Ms. Wilson's car. When Ms. Wilson told Mr. Dennis what happened, he stated "he would take care of it." 3 Report of Proceedings (RP) (Oct. 25, 2017) at 551.

After the tire-slashing episode, Mr. Dennis and Mr. Hall exchanged several hostile text messages. At one point, Mr. Dennis texted Mr. Hall claiming that he was going to the home of Mr. Hall's mother. That night Mr. Hall awoke to gunshots outside the home. Several bullet holes were later discovered on the driver's side of the car.

Two weeks later, Mr. Hall and Mr. Dennis saw each other at a concert. The interaction culminated in Mr. Hall punching Mr. Dennis in the face. Following the fight, Mr. Dennis sent a text message to Mr. Hall that Mr. Hall interpreted as a threat against his mother. Mr. Hall drove to his mother's house and contacted the police. While he was on the phone, someone set his car on fire.

After the fire, the feud between the two men entered a weeks-long lull. Mr. Hall had no further communications with Mr. Dennis. He moved out of his mother's house and began staying "in roach motels for about a month-and-a-half." 6 RP (Nov. 1, 2017) at 1191. Mr. Hall bought a new phone and changed his phone number. He also purchased a handgun.

On December 26, 2015, Mr. Hall learned Mr. Dennis and Ms. Wilson were planning to host a party. Around the party's scheduled time, Mr. Hall walked to the house where the party was to take place, armed with his gun. When Mr. Hall arrived at the house, he approached the front door and knocked. Only Mr. Dennis, Ms. Wilson, and the couple's two-month-old baby were inside at the time. Mr. Dennis answered the door. Within seconds of the door opening, Mr. Hall shot Mr. Dennis in the chest and fled the scene. Wounded, Mr. Dennis ran to the back of the house and collapsed in his backyard. First responders could not revive him. Mr. Dennis was declared dead on the scene.

Spokane Police arrested Mr. Hall seven hours after the shooting. Mr. Hall was charged with first degree murder, first degree burglary, second degree assault, and first degree unlawful possession of a firearm. Prior to trial, Mr. Hall pleaded guilty to unlawfully possessing a firearm. He entered not guilty pleas on the three remaining counts.

The case proceeded to a jury trial. Ms. Wilson described the shooting, testifying that she was sitting on the couch with her son when Mr. Dennis opened the door. She explained that Mr. Dennis did not speak when he opened the door, but seemed surprised: "He just opened the door and as he was opening it, he saw who it was and he just kind of took a step back like 'What the hell?' You know, 'What are you doing here?'" 3 RP

(Oct. 25, 2017) at 517. Ms. Wilson stated that Mr. Hall held the gun in his outstretched arm, that the gun was visible to her when fired, and that Mr. Hall's arm was steady when it discharged.

Mr. Hall also testified. He claimed he fired his weapon in self-defense. Mr. Hall stated he became "scared for [his] life" after his car was burned. 6 RP (Nov. 1, 2017) at 1192. He explained that he bought a gun for self-protection. Mr. Hall stated he went to Mr. Dennis's residence on December 26 in order to reach a "peaceful resolution to the situation." *Id*. at 1195. He armed himself just in case things did not go as planned. *Id*. at 1196.

Mr. Hall denied that he harbored a premeditated intent to shoot Mr. Dennis. Instead, he claimed he fired his weapon only in self-defense after Mr. Dennis reacted aggressively to his presence. Mr. Hall stated that he approached the front door and knocked. Mr. Hall said Mr. Dennis opened the door and then "[h]is eyes got big and surprised to see it was me, but he immediately got hostile." *Id*. at 1198. Mr. Hall claimed Mr. Dennis said "'what the F. What the F are you doing here?' And he lunged at me while he was reaching into [sic] what appeared to be a gun." *Id*. at 1199. Mr. Hall testified that he was scared because he knew Mr. Dennis owned a gun, and that he reacted by firing his gun at Mr. Dennis. *Id*.

Because Mr. Hall claimed self-defense, the State proposed an initial aggressor

instruction. Defense counsel objected, arguing the State had not presented evidence of a

separate inciting action. The trial court overruled the objection and issued the following

instruction:

INSTRUCTION 30

No person may, by any intentional act reasonably likely to provoke a
belligerent response, create a necessity for acting in self-defense and
thereupon kill or use, offer, or attempt to use force upon or toward another
person. Therefore, if you find beyond a reasonable doubt that the defendant
was the aggressor, and that defendant's acts and conduct provoked or
commenced the fight, then self-defense is not available as a defense.

Clerk's Papers at 433.

The prosecutor argued the initial aggressor instruction during summation.

According to the prosecutor, Mr. Hall's claim that he had gone to Mr. Dennis's home in

hope of peaceful reconciliation was not credible. "What kind of reaction did [Mr. Hall]

expect?" the prosecutor asked rhetorically. "'Oh, hey, Merry Christmas. Come on in,

Brian. Let's hug it up.' No. He knew what reception he was going to get that night." 7

RP (Nov. 1, 2017) at 1342-43. Given the history between Mr. Hall and Mr. Dennis, the

prosecutor argued that even if the jury believed Mr. Hall's testimony that Mr. Dennis had

responded to Mr. Hall's presence at the front door by lunging and reaching for a weapon,

the initial aggressor instruction was applicable and prevented Mr. Hall from being

acquitted under a theory of self-defense.

The jury found Mr. Hall guilty of first degree murder and first degree burglary, but

acquitted him of second degree assault. Mr. Hall received a total sentence of 551.5

months' incarceration.

Mr. Hall now brings this timely appeal.

ANALYSIS

Mr. Hall's appeal focuses entirely on the court's issuance of an initial aggressor

instruction. He claims the trial evidence did not justify the initial aggressor instruction

and that defense counsel provided ineffective assistance by failing to lodge a proper

objection. We disagree with these assignments of error.

The law of self-defense does not apply to someone who provokes a physical

altercation. *See State v. Wingate*, 155 Wn.2d 817, 822, 122 P.3d 908 (2005). To guard

against misapplication of the defense, an initial aggressor instruction may be given when

credible evidence indicates the defendant initiated a confrontation with the victim by

engaging in an act, beyond mere words, that is reasonably likely to provoke a belligerent

response. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). To warrant an

initial aggressor instruction, the defendant's act of provocation must be intentional, but

need not be unlawful.   *State v. Richmond*, 3 Wn. App. 2d 423, 433, 415 P.3d 1208

(2018).  In addition, the provoking act must also be something separate from the actual

charged assault.  *Bea*, 162 Wn. App. at 577.

Even under the facts presented by the defense, the jury could reasonably find

Mr. Hall was prohibited from invoking self-defense under an initial aggressor theory.

Given the violent history between Mr. Hall and Mr. Dennis, the jury could find that Mr.

Hall's mere presence at Mr. Dennis's doorstep, unannounced, was a threatening act likely

to cause panic and a belligerent response.  Mr. Hall and Mr. Dennis were not merely

engaged in a war of words or aggressive posturing.  The dispute between the two men

was deadly serious.  Knowing the history of bad blood between himself and Mr. Dennis,

Mr. Hall was not entitled to show up at Mr. Dennis's house, armed with a concealed

handgun, and then rely on Mr. Dennis's unsurprising aggressive response in order to

excuse the use of deadly force.  That is not self-defense.  It is premeditated murder.  The

trial court's initial aggressor instruction appropriately advised the jury as such and

ensured Mr. Hall was not given license to misuse the law of self-defense.

Because we find the instruction was properly given, Mr. Hall cannot show that his

attorney's performance was deficient—a required showing for a claim of ineffective

assistance of counsel.  *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007).

Defense counsel cannot be faulted for failing to object to a properly issued instruction.

*See* RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.").

Accordingly, we reject Mr. Hall's claim of ineffective assistance of counsel.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

I CONCUR:

_____
Siddoway, J.

No. 35716-3-III

FEARING, J. (dissenting) — Assuming this court remanded the prosecution for a new trial without a first aggressor jury instruction, a jury would likely still convict Brian Hall of first degree murder.  In other words, the jury would not accept Hall's claim of self-defense.  Therefore, I am reluctant to dissent when my dissent, even if adopted as the majority view, would lead to the same outcome and only create additional expense for the judicial system.  Nevertheless, I must remain true to legal principles.

The crux of the majority opinion reads:

> Even under the facts presented by the defense, the jury could reasonably find Mr. Hall was prohibited from invoking self-defense under an initial aggressor theory.  Given the violent history between Mr. Hall and Mr. Dennis, the jury could find that Mr. Hall's mere presence at Mr. Dennis's doorstep, unannounced was a threatening act, likely to cause panic and a belligerent response.  Mr. Hall and Mr. Dennis were not merely engaged in a war of words or aggressive posturing.  The dispute between the two men was deadly serious.  Knowing the history of bad blood between himself and Mr. Dennis, Mr. Hall was not entitled to show up at Mr. Dennis's house, armed with a concealed handgun, and then rely on Mr. Dennis's unsurprising aggressive response in order to excuse the use of deadly force.

Majority opinion at 7. In other words, according to the majority, one's presence at a hated enemy's doorstep, unanticipated by the enemy, constitutes an aggressive act that subjects one to a first aggressor instruction regardless of what other action one takes and regardless of what comments one utters to the enemy. The majority cites no decision for this proposition. I find no case that supports the majority's position. The majority ruling instead conflicts with Washington precedent.

Only two verbal witnesses observed the shooting of Demetrius Dennis by Brian Hall: Melissa Wilson and Hall. Wilson was Dennis' girlfriend and bore Dennis' son, who sat on Wilson's lap at the time of the shooting. According to Wilson, Dennis opened the front door in response to a knock. Wilson then viewed Hall open the screen door and step a foot over the door's threshold. Dennis took a step back. Hall then shot Dennis.

According to Brian Hall, Hall knocked on the front door of Demetrius Dennis' abode. When Dennis opened the door, Hall had both of his feet on the top landing of the porch with the screen door open. Dennis immediately grew hostile and remarked: "'What the F are you doing here?'" Report of Proceedings (RP) at 1199. Dennis lunged toward Hall and reached into his waistband as if drawing a gun. Hall knew Dennis to own guns. A frightened Hall drew a gun from his coat and shot Dennis.

Under Melissa Wilson's version of the facts, Brian Hall shot Demetrius Dennis without any earlier act or threat of violence directed at Dennis. Under Brian Hall's

2

version of the facts, he shot Demetrius Dennis in self-defense and only after Dennis

lunged at him.

RCW 9A.16.020 affords an accused the right to self-defense. The statute reads, in

relevant part:

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
> . . . .
> (3) Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

The statute makes no mention of losing the defense by being an initial aggressor.

Under case law, an accused person, who is an aggressor in an affray or by acts or

words provokes or initiates an affray, cannot invoke the doctrine of self-defense or be

justified in shooting to prevent injury, unless, before such shooting, the aggressor in good

faith sought and endeavored to withdraw from and abandon the conflict. *State v. Currie*,

74 Wn.2d 197, 199, 443 P.2d 808 (1968). Based on this principle, the trial court may

instruct the jury on the unavailability of self-defense as a justification for homicide when

facts warrant a finding that the accused's aggressive action provoked a hostile act by the

victim, which hostile act in turn caused the accused to shoot the victim.

A trial court should reluctantly issue a first aggressor jury instruction. Washington

decisions recognize that the initial aggressor instruction may deprive an accused of the ability to claim self-defense. *State v. Wasson*, 54 Wn. App. 156, 160, 772 P.2d 1039 (1989). Therefore, few situations warrant an aggressor instruction. *State v. Arthur*, 42 Wn. App. 120, 125 n.1, 708 P.2d 1230 (1985); *State v. Wasson*, 54 Wn. App. at 161. Both sides' theories of the case can usually be sufficiently argued and understood by the jury without the instruction. *State v. Arthur*, 42 Wn. App. at 125 n.1. Contrary to these limiting principles, trial courts, at least from the vantage of this reviewing court, routinely present the jury a first aggressor instruction when the accused claims self-defense. The limiting caveats should lead this court to reverse convictions for delivery of the first aggressor instruction unless the facts manifestly demand the instruction.

The facts in Brian Hall's prosecution warranted no first aggressor jury instruction, since Hall's initiation into the affray either came after Demetrius Dennis' hostile act or he instigated the affray by shooting Dennis. The provoking act that justifies a first aggressor instruction must be one that a jury could reasonably assume would provoke a belligerent response by the victim. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011); *State v. Wasson*, 54 Wn. App. at 159 (1989). The rule controlling our appeal is that the provoking act cannot be the actual assault in order to warrant the giving of the first aggressor instruction. *State v. Kidd*, 57 Wn. App. 95, 100, 786 P.2d 847 (1990); *State v. Wasson*, 54 Wn. App. at 159; *State v. Brower*, 43 Wn. App. 893, 902, 721 P.2d 12

4

(1986). No case permits the instruction when the accused approaches a hated enemy, whether at the enemy's front door or some other venue, without the accused first either engaging in an aggressive act or threatening violence.

Washington courts have reversed convictions because the evidence failed to support a first aggressor instruction. *State v. Wasson*, 54 Wn. App. 156 (1989); *State v. Brower*, 43 Wn. App. 893 (1986); *State v. Arthur*, 42 Wn. App. 120 (1985). The three cases have disparate facts, but *Arthur* and *Brower* follow the proposition that the trial court should not deliver the first aggressor instruction if the only act of aggression by the defendant is the assaultive behavior that led to the victim's injuries.

In *State v. Arthur*, this court reversed a conviction for second degree assault because of the rendering of the first aggressor instruction. The instruction indicated that the State must prove that the defendant performed an unlawful act that created the necessity for self-defense, and this court held such an instruction void for vagueness. Still the decision notes the absence of evidence to support the instruction and announces the proposition that trial courts should rarely grant the instruction.

In *State v. Arthur*, William Arthur stabbed Terry Waterhouse. Waterhouse testified he and friends visited in a parking lot, when a drunken and abusive Arthur approached the group. When Arthur got "'in his face,'" Waterhouse pushed Arthur to the ground. *State v. Arthur*, 42 Wn. App. at 121. Waterhouse and his friends then went

5

to a tavern. Waterhouse later returned to the same parking lot. Arthur also returned and pulled his vehicle into a space in the lot. Arthur abruptly pulled his automobile from the parking spot at high speed, hit a car in an adjoining space, and his car ended up in a ditch. Waterhouse ambled to Arthur's vehicle to prevent Arthur from leaving the scene of an accident. When Waterhouse reached into Arthur's car, Arthur stabbed him. Arthur testified that he acted in self-defense because he feared Waterhouse would attack him. This reviewing court noted that the only possible provoking act committed by Arthur was the collision with the other vehicle, but that Arthur had withdrawn from the parking lot. Arthur performed no immediate act that provoked Waterhouse to respond with violence. Apparently the earlier abusive conduct lacked relevance.

In *State v. Brower*, 43 Wn. App. 893 (1986), a jury convicted Ted Brower of second degree assault. Brower journeyed to Claudia Hoyt's apartment to retrieve his car. Brower feared Hoyt or her friends would be armed, so he brought his firearm to use as a last resort. Frederick Martin occupied Hoyt's residence when Brower arrived. Martin grew agitated with Brower. When Brower left the apartment and walked downstairs, Martin trailed Brower. Brower turned and stuck his revolver in Martin's stomach and told him to return to the apartment. This court reversed the conviction because of the lack of evidence to support the giving of a first aggressor instruction. Assuming Brower to be the first aggressor, the first aggression occurred when Brower assaulted Martin.

6

Although Brower armed himself before traveling to Hoyt's apartment, Brower possessed the right to carry the firearm. A broad reading of *Brower* champions the proposition that arming oneself does not constitute an act that reasonably provokes a belligerent response.

Brian Hall's appearance at Demetrius Dennis' residence's front door did not justify a first aggressor jury instruction. The American prevailing view holds that the alleged provocative act that justifies the first aggressor jury instruction must be an act violative of the law. 40 AM. JUR. 2D *Homicide* § 146 (2019); *State v. Dephenbaugh*, 106 W. Va. 289, 145 S.E. 634, 637 (1928). Stated differently, not every aggression or provocation of trouble robs a man of the right of self-defense. *State v. Foutch*, 95 Tenn. 711, 34 S.W. 423, 424 (1896). Acts that merely afford an opportunity for a conflict or that do not proximately contribute to the conflict will not have this effect. 40 AM. JUR. 2D *Homicide* § 146 (2019). A desire to anger the victim out of revenge does not permit withdrawal of the defense of self-defense. *Barker v. Commonwealth*, 477 S.W.3d 583, 587-88 (Ky. 2015). In the context of homicide, some sort of physical aggression or a threat of imminent use of deadly force is required before a person will be considered an aggressor. *Drennen v. State*, 2013 WY 118, 311 P.3d 116, 128 (Wyo. 2013). This view coincides with the rule that the victim has no right to attack the accused by verbal provocation alone. *Drennen v. State*, 311 P.3d at 128 (Wyo. 2013); *People v. Griffin*, 224 P.3d 292, 300 (Colo. Ct. App. 2009).

One who merely does an act which affords an opportunity for conflict is not thereby precluded from claiming self-defense. *State v. Jackson*, 94 Ariz. 117, 382 P.2d 229, 232 (1963). A violent act, rather than lack of judgment, merits the first aggressor instruction. *State v. Bristol*, 53 Wyo. 304, 84 P.2d 757 (1938). Being armed does not foreclose the right of self-defense if otherwise the defendant would have been entitled to the defense. *State v. Jackson*, 382 P.2d at 232-33 (1963); *State v. Foutch*, 95 Tenn. 711, 34 S.W. 423 (1896).

The foreign case most analogous is *State v. Bristol*, 53 Wyo. 304 (1938). A jury convicted Myron Bristol of voluntary manslaughter resulting from his killing of Wesley Skogerson. Bristol relied on self-defense. Skogerson and Bristol earlier patronized a tavern, during which time Skogerson verbally abused Bristol. Skogerson moved to a restaurant. Bristol armed himself with a gun and also walked to the restaurant. Bristol walked to the booth where Skogerson sat. Bristol testified that he knew not that Skogerson was present in the restaurant, but other witnesses disagreed. At any rate, the two tussled and Bristol shot Skogerson.

In *State v. Bristol*, the trial court instructed the jury that an aggressor cannot invoke the right of self-defense. The court also instructed the jury that one cannot claim the benefit of the law of self-defense if he intentionally places himself in a place where he knows he might need to defend himself. In other words, Myron Bristol could not assert

8

self-defense if he intentionally approached Wesley Skogerson with the expectation that

Skogerson might attack him because of the previous abuse at the tavern. The State

argued that Bristol purposely went to the restaurant with a pistol looking for Skogerson.

According to the State, Bristol taunted Skogerson so that Skogerson would assault Bristol

and thereby justify Bristol's killing of Skogerson. The State argued that Bristol should

have never entered the restaurant. The Wyoming high court held that, even under the

State's theory of the case, a first aggressor jury instruction was not warranted. Better

judgment would have led Bristol to go home rather than enter the restaurant particularly

because of Skogerson's threats to Bristol inside the tavern. But Bristol had the right to

enter the restaurant and arm himself with a gun. No person forfeits the right to self-

defense by confronting danger.

The majority may worry that Brian Hall went to Demetrius Dennis' home with the

hope or expectation that Dennis would lunge at him so that Hall could shoot Dennis dead.

I question whether one ever approaches an enemy with the hope that the enemy will first

attack him. Regardless, the law does not, at least expressly, exclude the defense of self-

defense in such circumstances when the killer does not make the first aggressive move or

does not first threaten to cause harm. Because a first aggressor instruction should be

employed sparingly, we should not extend the first aggressor doctrine beyond its present

boundaries.

9

No. 35716-3-III
*State v. Hall* (dissent)

The majority may alternatively fear, as I do, that Brian Hall went to Demetrius Dennis' home to kill Dennis and with the expectation of conjuring a story of self-defense in order to avoid a conviction. When Dennis opened the door, Hall immediately fired. Unlike the majority's first worry, this fear might be accurate, but no first aggressor jury instruction is needed to convict Hall under these circumstances.

I do not know whether the majority limits its ruling to an instance when the accused knocks at the victim's front door. Regardless, the majority ruling may preclude the defense of self-defense whenever one purposely but unscheduledly approaches an enemy, after violence between the two, no matter one's intentions and no matter the location of the contact. Neither a Hatfield nor a McCoy better cross the Tug Fork.

The State astutely argues that the jury could have accepted a portion of Brian Hall's testimony as the truth and accepted a portion of Melissa Wilson's testimony as the truth. According to the State's theory of a middle ground version of the facts, the jury could have determined that Hall drew a gun on Demetrius Dennis, Dennis then lunged at Hall in self-defense, and finally Hall shot the gun. I question the validity of permitting the jury to speculate as to a version of the facts supported by no witness when one's right to self-defense is at stake. No case law stands for this proposition. In *State v. Wasson*, 54 Wn. App. 156 (1989), *State v. Brower*, 43 Wn. App. 893 (1986), and *State v. Arthur*, 42 Wn. App. 120 (1985), this court could have adopted, but did not adopt, select portions of

10

No. 35716-3-III
*State v. Hall* (dissent)

witnesses' facts in order to justify a first aggressor jury instruction.

Brian Hall worries that his trial counsel withdrew any objection to the first aggressor instruction. Therefore, Hall asserts that delivery of the jury instruction constituted manifest constitutional error and he suffered ineffective assistance of counsel. The record shows that two trial defense counsels argued aggressively against the delivery of the instruction on the ground that facts did not support the instruction. After the argument, one counsel interjected that Hall would defer to the trial court's decision. The comment of deference prompts Hall's concern of withdrawal of the objection. The State graciously and correctly responds that trial counsel effectively objected to the instruction. Therefore, I do not address manifest constitutional error or ineffective assistance of counsel.

I DISSENT:

_____
Fearing, J.

11