[No. 8587–2–III.  Division Three.  May 16, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. RODGER LEWIS WASSON, *Appellant.*

*Douglas Robinson,* for appellant (appointed counsel for appeal).

*Timothy Ohms, Prosecuting Attorney,* and *William Acey, Deputy,* for respondent.

SHIELDS, J.—Rodger Wasson was charged with first degree assault for shooting Thomas Reed. He claimed self–defense at trial. He was convicted of second degree assault, former RCW 9A.36.020, on March 3, 1987. He assigns error to (1) an aggressor instruction and (2) the State's failure to preserve certain photographic evidence. We reverse and remand for a retrial on the first issue and find no error concerning the second.

On November 21, 1986, Mr. Wasson and his girl friend, Wildena Jennenings, met his cousin, Billy Bartlett, at a bar in Clarkston, Washington. After drinking several beers, the three of them proceeded to Mr. Bartlett's apartment in the early morning hours of November 22. There, Mr. Wasson and Mr. Bartlett quarreled over what Mr. Wasson thought were improper attentions by Mr. Bartlett toward Ms. Jennenings.

Mr. Wasson got into his car in the alley behind the apartment and repetitively revved the engine, rocking the car back and forth. Mr. Bartlett yelled at Mr. Wasson to "knock it off". When he refused to do so, Mr. Bartlett broke the window on the driver's side of Mr. Wasson's car and attempted to pull him out. Mr. Wasson got out of the vehicle and the two pushed each other to the ground. During this altercation, or immediately thereafter, Mr. Wasson obtained a .357 magnum from the backseat of his car.

This commotion drew the attention of several neighbors, including Mr. Reed who was visiting some tenants in the apartment complex. He approached the two men, telling them to quiet down. A second encounter led to a fight between Mr. Reed and Mr. Bartlett. Mr. Reed struck several blows to Mr. Bartlett's face and body, knocking him to the ground and across the alley. He then turned and took several rapid steps toward Mr. Wasson, whereupon Mr. Wasson shot him in the chest. Shortly thereafter, a police officer observed Mr. Wasson, who was coming southbound

on Sixth Street, run into the middle of the street. The officer stopped, and Mr. Wasson advised him there had been a shooting.

Mr. Wasson's evidence was that at the time of Mr. Reed's second approach, he and Mr. Bartlett had resolved their differences and were discussing who should pay for the broken car window. Mr. Wasson had removed his gun from his car to protect it from being stolen since the broken window prevented the car from being secured. Without warning, Mr. Reed hit Mr. Wasson in the ear and then attacked Mr. Bartlett. Mr. Wasson thought Mr. Bartlett had been stabbed and hid beside a tree. Mr. Wasson testified he could not flee because he had just recently had a hernia operation. Mr. Reed came at him threatening that he was next. Mr. Wasson told Mr. Reed to stop and fired after Mr. Reed continued his approach.

The State's evidence was that Mr. Wasson and Mr. Bartlett were still fighting when Mr. Reed approached. Mr. Bartlett threw a first punch at Mr. Reed but missed. After Mr. Reed knocked Mr. Bartlett to the ground, he approached Mr. Wasson to let him know how he felt, but had no immediate intention of hitting Mr. Wasson unless he met with resistance. Mr. Reed did not remember hitting Mr. Wasson in the ear.

Based on this evidence, self–defense instructions were submitted to the jury. However, the court also instructed that Mr. Wasson could not claim self–defense if he was found to be the aggressor (instruction 12), but could claim it if he attempted to withdraw (instruction 13). Mr. Wasson contends there was insufficient evidence to support either instruction because there was no showing he was an aggressor toward Mr. Reed. The State, on the other hand, contends the fight between Mr. Wasson and Mr. Bartlett was sufficient to provoke Mr. Reed's response and to support the instruction.

This court has noted aggressor instructions of various forms have long been used by Washington courts; however,

it is error to give such an instruction when it is not supported by the evidence. *State v. Brower,* 43 Wn. App. 893, 901, 721 P.2d 12 (1986); *State v. Upton,* 16 Wn. App. 195, 204, 556 P.2d 239 (1976), *review denied,* 88 Wn.2d 1007 (1977). Instruction 12 here, based on revised WPIC 16.04, stated:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self[–]defense and thereupon use force upon another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self–defense is not available as a defense.

■ The original version of WPIC 16.04 used the phrase "[n]o person may by any *unlawful* act create a necessity for acting in self–defense . . ." (Italics ours.) However, in *State v. Arthur,* 42 Wn. App. 120, 708 P.2d 1230 (1985), the court held that version of the instruction was unconstitutionally vague. The court further held the provoking act must be intentional and one which a "jury could reasonably assume would provoke a belligerent response by the victim." *Arthur,* at 124. As a result, WPIC 16.04 was amended in the 1986 supplement to include the language in *Arthur,* deleting the word "unlawful" and amending the phrase to read "by any *intentional* act reasonably likely to provoke a belligerent response . . ." (Italics ours.) It has long been established that the provoking act must also be related to the eventual assault as to which self–defense is claimed. *See State v. Hawkins,* 89 Wash. 449, 455, 154 P. 827 (1916).

Perhaps there is evidence here of an unlawful act by Mr. Wasson, a breach of peace. However, there is no evidence that Mr. Wasson acted intentionally to provoke an assault from Mr. Reed. In fact, there is evidence Mr. Wasson never initiated any act toward Mr. Reed until the final assault. Under these circumstances, our holding in *State v. Brower, supra,* is controlling. There, the defendant claimed self–defense to assault charges when he shot the victim after an

argument between the victim and the defendant's companion. In response to the issue of whether an aggressor instruction was proper, we stated, at page 902:

> If Mr. Brower was to be perceived as the aggressor, it was only in terms of the assault itself. Under the facts of this case, the aggressor instruction was improper. *Upton,* at 204. The inclusion of the instruction effectively deprived him of his theory of self–defense; the jury was left to speculate as to the lawfulness of this conduct prior to the assault. *State v. Arthur, supra.*

Instruction 12 coupled with instruction 13 given here effectively deprived Mr. Wasson of his ability to claim self–defense. If he was found to be the aggressor, instruction 13 stated his right to self–defense was revived only if he:

> in good faith, had withdrawn or attempted to withdraw from the action which provoked the belligerent response at such a time and in such a manner as to have clearly appraised Thomas Reed of his withdrawal or attempt to withdraw, . . .

Excluding these instructions, if the jury believed Mr. Wasson acted in self–defense, he would have been entitled to stand his ground in doing so. Instruction 11. Under the circumstances presented, the aggressor instructions were improper.[1]

*State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963), cited by the State, is factually distinguishable. Notwithstanding, it is consistent with our holding. There, the court approved an aggressor instruction when the defendant killed his former girl friend and her husband after engaging in threatening conduct toward her and leading them both to a

---

[1]Instruction 12, based on revised WPIC 16.04, is not vague, as urged by Mr. Wasson, in failing to require that the acts be reasonably likely to provoke a belligerent response *from the victim.* To add those words would be redundant. The intentional act now required by the instruction necessarily has the victim, not a third party, as its object.

remote area. It could reasonably be concluded the defendant in *Thomas* intended to provoke the husband into the lawful defense of his wife, and it was reasonably likely his acts would produce that response.[2]

We agree with the court's observation in *State v. Arthur, supra* at 125 n.1: "Few situations come to mind where the necessity for an aggressor instruction is warranted. The theories of the case can be sufficiently argued and understood by the jury without such instruction." The instructions on self–defense were sufficient to resolve the issues presented. We, therefore, reverse and remand for a retrial excluding the aggressor instructions.

Since a retrial will be necessary, we briefly address the second assigned error: whether the State's failure to preserve certain photographic evidence constituted prejudicial error.

█ A police officer took photographs of Mr. Bartlett after the altercation. The officer testified "they didn't turn out. I'm not exactly sure why; either the battery in the camera was not working, at the time, or my own negligence." On appeal, Mr. Wasson's only claim of prejudice is that he was thereby precluded from using the photographs to corroborate otherwise undisputed testimony that Mr. Bartlett was severely beaten by Mr. Reed. The police could not preserve evidence which was never obtained. In any event, had the photographs "turned out", being demonstrative of undisputed testimony, they would have been cumulative to his defense. *See State v. Laureano,* 101 Wn.2d 745, 760, 682 P.2d 889 (1984), *overruled on other grounds in State v. Brown,* 111 Wn.2d 124, 761 P.2d 588 (1988), *reh'g granted* (Jan. 27, 1989); *State v. Vaster,* 99 Wn.2d 44, 52, 659 P.2d 528 (1983).

---

[2]Neither is our holding here intended to address cases such as *State v. Hoyer,* 105 Wash. 160, 177 P. 683 (1919) in which an assault or homicide is committed during a felony.

162

Reversed and remanded for a new trial.

MUNSON, A.C.J., and GREEN, J., concur.

Review denied at 113 Wn.2d 1014 (1989).