IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33003-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID MATTHEW HENKLEMAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — David Matthew Henkleman was convicted of second degree murder while armed with a deadly weapon, first degree assault while armed with a deadly weapon, and second degree assault while armed with a deadly weapon. The three convictions arose from his involvement in a bar fight. On appeal, he contends he was denied his right to a public trial, the trial court erroneously provided the jury with a first aggressor instruction, and the trial court abused its discretion in sentencing him to consecutive sentences on two of the counts. We disagree with his contentions and affirm.

FACTS

Early in the morning on December 4, 2012, Mr. Henkleman entered a bar, ordered a drink, and approached Casey Heath on the bar patio. At this time, Mr. Heath was sitting on the bar patio with his friends Eric Cooper and John Poole. After briefly speaking with Mr. Heath, Mr. Henkleman made sudden and repeated movements toward Mr. Heath's torso with his right hand. Mr. Heath abruptly leaped away from Mr. Henkleman and ran toward the back door leading into the tavern. Mr. Henkleman chased after Mr. Heath, tackled him, and continued hitting him while he was on the ground.

Mr. Cooper went to assist Mr. Heath. While Mr. Henkleman was on top of Mr. Heath, Mr. Cooper hit Mr. Henkleman. Mr. Henkleman then turned his attention to Mr. Cooper, and through the course of the encounter, Mr. Cooper punched Mr. Henkleman twice and Mr. Henkleman stabbed Mr. Cooper in his left armpit. After Mr. Cooper was injured, Mr. Poole became involved. Mr. Poole testified to elbowing and pushing Mr. Henkleman. Mr. Henkleman responded to Mr. Poole's assault by stabbing Mr. Poole in the right arm with his knife.

Police arrived, and Mr. Heath was pronounced dead at the scene. Mr. Heath suffered eight stab wounds. Mr. Henkleman was charged with three felonies: count I, second degree murder of Casey Heath while armed with a deadly weapon; count II, first degree assault of Eric Cooper while armed with a deadly weapon; and count III, second degree assault of John Poole while armed with a deadly weapon.

The case was tried to a jury. During voir dire, the court conducted a sidebar during which the court and parties decided that eight prospective jurors would be dismissed for cause. After the conclusion of the trial, the court, over the objection of Mr. Henkleman, provided the jury with a first aggressor instruction as it pertained to the alleged assaults of Mr. Cooper and Mr. Poole. The jury found Mr. Henkleman guilty on all three counts. The trial court entered consecutive sentences on counts I and II, and sentenced Mr. Henkleman to 427 months of confinement. Mr. Henkleman appealed.

## ANALYSIS

1. *Whether Mr. Henkleman was denied his right to a public trial*

Mr. Henkleman argues that his right to a public trial was violated when the court decided to dismiss eight potential jurors at a sidebar.

Under article I, sections 10 and 22 of the Washington Constitution as well as the Sixth Amendment to the United States Constitution, a defendant is guaranteed the right to a public trial. While justice should be administered openly, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012) (plurality opinion).

A defendant's failure to object to a public trial violation does not preclude appellate review under RAP 2.5. *State v. Paumier*, 176 Wn.2d 29, 36, 288 P.3d 1126 (2012). "Whether a criminal accused's constitutional public trial right has been violated

3

is a question of law, subject to de novo review on direct appeal." *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006). In analyzing whether a defendant's right to a public trial has been violated, courts should

> "begin by examining . . . whether the public trial right is implicated at all . . . then turn to the question whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, whether . . . the closure was justified."

*State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (alterations in original) (quoting *Sublett*, 176 Wn.2d at 92 (Madsen, C.J., concurring)).

It is clear that public trial rights attach to "jury selection, including for cause and peremptory challenges." *State v. Love*, No. 89619-4, slip op. at 7 (Wash. July 16, 2015). Here, dismissal of jurors during a sidebar conversation implicated Mr. Henkleman's right to a public trial.

Nevertheless, because there was no closure, we hold that Mr. Henkleman was not denied his right to a public trial.

Washington's Supreme Court has reversed convictions for two types of closures. *Love*, slip op. at 7. The first type of closure occurs "'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave.'" *Love*, slip op. at 7 (quoting *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)). "The second type of closure occurs where a portion of a trial is held someplace 'inaccessible' to spectators, usually in chambers." *Love*, slip op. at 8 (quoting *Lormor*,

No. 33003-6-III
*State v. Henkleman*

172 Wn.2d at 93). "This court has adopted the experience and logic test to determine whether a closure occurred in the absence of an express closure on the record." *Smith*, 181 Wn.2d at 520 (citing *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013)).

Here, there was no express closure on the record. The record does reflect, however, that a sidebar conversation took place during the process of jury selection. At the conclusion of jury selection, the court made the following statement on the record.

> THE COURT: I want to go ahead and put on the record the sidebar that we had at the beginning of the time when the jury selection process was occurring. During that time period, the lawyers indicated that they did not have any argument as it related to requests for excusing jurors for cause. There was an agreement during that sidebar that juror numbers 15, 31, 41, 44, 49, 46, 48, and 36 would be excused for cause based upon the different physical conditions they had or hardships as it related to siting [sic] for the length of this trial.

1 Report of Proceedings (RP) at 85.

Mr. Henkleman argues that he was denied his right to a public trial when for cause challenges were made during a sidebar conversation.

In *Love*, voir dire was conducted in open court and potential jurors' responses to questioning were included as part of the record. Slip op. at 1. Counsel exercised for cause and peremptory challenges to potential jurors during a sidebar conversation. *Id.* The sidebar conversation, although held so that the jury could not hear, "was on the record and visible to observers in the courtroom." *Love*, slip op. at 3. On appeal, Love

5

argued that potential jurors were challenged in a manner that violated his right to a public trial.

In concluding that there was no closure, the court noted that the public was able to "watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury." *Id.* at 9. The court went on to explain "[t]he public was present for and could scrutinize the selection of Love's jury from start to finish, affording him the safeguards of the public trial right[.]" *Id.* The court determined there was no closure and as a result, Love's public trial claim failed.

Similarly, here, there is no indication that the public was excluded. The courtroom minutes indicate that court was in open session during the entirety of the jury selection process.[1] The minutes, as well as the report of proceedings, further indicate that the court ultimately disclosed the contents of the sidebar conversation on the record. Any members of the public, who were in the courtroom observing, were informed of what was discussed during the sidebar. The public was present during the jury selection and could scrutinize the selection of Mr. Henkleman's jury from start to finish. Mr. Henkleman was afforded the safeguards of having a public trial.[2]

---

[1] While the process of jury selection was not transcribed in the report of proceedings, it is part of the record through courtroom minutes.

[2] Further, although not argued by either party, under RCW 2.36.110, "[i]t shall be

6

Mr. Henkleman was not denied his right to a public trial when it was determined that potential jurors would be dismissed for cause at a sidebar. There was no closure.

2.      *Whether the trial court erred in giving the first aggressor instruction*

Mr. Henkleman contends that the trial court committed reversible error when it provided the jury with the first aggressor instruction.[3] Mr. Henkleman asserts that the instruction was improper because he was not the first aggressor toward Mr. Cooper or Mr. Poole and "there was insufficient evidence that [his] assault of [Mr.] Heath was intended to provoke a belligerent response from either [Mr.] Cooper or [Mr.] Poole." Br. of Appellant at 14.

---

the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect." Further, under RCW 2.36.100(1) a trial judge has broad discretion to excuse prospective jurors for "undue hardship." Here, the court indicated that it was excusing jurors because of "different physical conditions they had or hardships as it related to siting [sic] for the length of this trial." 1 RP at 85. The court had the duty to excuse any juror who it believed would be a potentially unfit juror.

[3] The instruction stated:

 No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that defendant was the aggressor, and that the defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. However, the right of self-defense may be revived if the aggressor in good faith withdrew from the aggression at such a time and in such a manner as to have clearly apprised Mr. Cooper and/or Mr. Poole that he in good faith was desisting, or intended to desist, from further aggressive action.

Clerks Papers at 242.

When a defendant seeks to have the jury instructed on self-defense, the State may seek to have the jury provided with a first aggressor instruction—an instruction providing that if the jury finds the defendant provoked the need to act in self-defense, his or her claim for self-defense must fail. *See State v. Bea*, 162 Wn. App. 570, 575, 254 P.3d 948 (2011).

"Aggressor instructions are not favored." *State v. Kidd*, 57 Wn. App. 95, 100, 786 P.2d 847 (1990). Because "[a] first aggressor instruction potentially removes self-defense from the jury's consideration, relieving the State of its burden of proving that a defendant did not act in self-defense," the instruction should be given only sparingly. *Bea*, 162 Wn. App. at 575-76 (citing *State v. Douglas*, 128 Wn. App. 555, 563, 116 P.3d 1012 (2005); *State v. Riley*, 137 Wn.2d 904, 910 n.2, 976 P.2d 624 (1999)).

"[I]t is error to give such an instruction when it is not supported by the evidence." *State v. Wasson*, 54 Wn. App. 156, 158-59, 772 P.2d 1039 (1989) (citing *State v. Brower*, 43 Wn. App. 893, 901, 721 P.2d 12 (1986); *State v. Upton*, 16 Wn. App. 195, 204, 556 P.2d 239 (1976)). Nevertheless, when there is credible evidence from which the jury could reasonably find that the defendant provoked the need to act in self-defense, it is not error to provide the instruction. *Riley*, 137 Wn.2d at 909-10.

Whether sufficient evidence supported the first aggressor instruction is a question of law and is, therefore, reviewed de novo. *State v. Stark*, 158 Wn. App. 952, 959, 244 P.3d 433 (2010). When determining whether evidence was sufficient to support the

8

giving of an instruction, we view the supporting evidence in the light most favorable to the party who requested the instruction; accordingly, here, the State needed only to produce some evidence that Mr. Henkleman was the first aggressor to meet its burden of production. *See Bea*, 162 Wn. App. at 577.

Here, evidence at trial was presented to suggest that Mr. Poole and Mr. Cooper became involved in the melee because Mr. Henkleman attacked their friend, Mr. Heath. While Mr. Cooper and Mr. Poole used force against Mr. Henkleman before Mr. Henkleman used force against them, their use of force was provoked by Mr. Henkleman's assault of their friend. Specifically, Mr. Poole testified that Mr. Cooper went to assist Mr. Heath "right away" and that when Mr. Cooper first approached Mr. Henkleman, Mr. Henkleman was hunched over Mr. Heath. 5 RP at 968. There was further testimony from Mr. Poole that "I thought that a guy was on top of my friend beating him—beating him while he was down, and Casey was not fighting." 5 RP at 972. While other testimony may have indicated that Mr. Henkleman's assault of Mr. Heath had concluded before Mr. Poole and Mr. Cooper approached Mr. Henkleman, it is for the jury to discern witness credibility and persuasiveness of evidence. [4] *In re Disciplinary*

---

[4] In its ruling on whether an aggressor jury instruction was warranted, the trial court reasoned:

> There certainly has been evidence that clearly suggests that Mr. Cooper and Mr. Poole approached Mr. Henkleman because they knew that their friend, Mr. Heath, had been assaulted. And at that point, of course, it appears that neither of those gentlemen necessarily understood what had

*Proceedings Against Kuvara*, 97 Wn.2d 743, 747, 649 P.2d 834 (1982). The State met its burden of production by producing some evidence that Mr. Henkleman's attack of Mr. Heath provoked Mr. Cooper's and Mr. Poole's involvement in the melee.

Mr. Henkleman argues that his attack of Mr. Heath was not intended to provoke a response from Mr. Cooper or Mr. Poole. In support of this argument, Mr. Henkleman relies on this court's decision in *Wasson*.

While the provoking act must be intentional, it cannot be "an act directed toward one other than the actual victim, unless the act was likely to provoke a belligerent response from the actual victim." *Kidd*, 57 Wn. App. at 100 (citing *Wasson*, 54 Wn. App. at 159-61). Further, "[i]t has long been established that the provoking act must also be related to the eventual assault as to which self-defense is claimed." *Wasson*, 54 Wn. App. at 159 (citing *State v. Hawkins*, 89 Wash. 449, 455, 154 P. 827 (1916)).

*Wasson* is distinguishable. In *Wasson*, the court reversed the defendant's conviction and ordered a new trial after it determined that the trial court erroneously provided the jury with an aggressor instruction. *Id.* at 161. There, the defendant was involved in an altercation with an individual. *Id.* at 157. Eventually, a third party appeared and aggressively approached the defendant. *Id.* at 157-58. The defendant shot

happened to Mr. Heath at that point and that they first approached Mr. Henkleman in an attempt to ensure that Mr. Heath was no longer assaulted.
There was testimony also perhaps that certainly the assault had already been concluded at the time Mr. Poole and Mr. Cooper approached.

10

the third party and, at trial, claimed self-defense. *Id.* The court concluded that no evidence had been presented that the defendant acted to provoke an assault from the third party. *Id.* at 159. The third party was not interfering to protect the other individual; rather, the third party actually assaulted the other individual prior to aggressively approaching Mr. Wasson. *Id.* at 157-58.

Unlike *Wasson*, where the original assault was not related to the eventual assault, Mr. Henkleman's assault of Mr. Heath was related to the eventual assaults on his friends who were coming to his rescue. While Mr. Henkleman's act of attacking Mr. Heath was not directed at either of Mr. Heath's friends, a reasonable juror could find that Mr. Henkleman's attack on Mr. Heath was likely to provoke a response from Mr. Heath's friends. The giving of the first aggressor instruction, under these facts, was not error.

3. *Whether the trial court abused its discretion in sentencing Mr. Henkleman to consecutive sentences on counts I and II*

Mr. Henkleman contends the trial court abused its discretion when it imposed a consecutive sentence for his second degree murder conviction and his first degree assault conviction.

RCW 9.94A.589(1)(b) governs sentencing for two or more serious violent offenses arising from separate or distinct criminal conduct. It provides that when a defendant is convicted of two or more serious offenses, the sentences imposed "*shall be*

---

7 RP at 1261-62.

11

*served consecutively to each other.*" RCW 9.94A.589(1)(b) (emphasis added).

Notwithstanding this language, a sentencing court has discretion to run the sentences

concurrently if the sentencing court determines there are mitigating factors justifying an

exceptional downward sentence. *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322,

166 P.3d 677 (2007).

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. . . .
> . . . .
> A departure from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence.

RCW 9.94A.535.

Here, Mr. Henkleman was convicted of second degree murder and first degree

assault. The charges arose from separate and distinct criminal conduct—the murder of

Mr. Heath and the assault of Mr. Cooper—and they are both "serious violent offenses" as

defined by RCW 9.94A.030(46)(a)(iii) and (v). Accordingly, absent mitigating factors

justifying an exceptional downward sentence, the sentencing court was required to run

the sentences concurrently.

Mr. Henkleman argues that the trial court was not aware that it had the discretion

to impose an exceptional downward sentence. However, at sentencing, the court stated:

> In Washington state, there are mandatory sentencing guidelines, and I am required to sentence a defendant within that sentencing range. Absent extraordinary circumstances, a sentencing range is based upon the

> seriousness of the offense and a defendant's offender score. Today, I do not find there is anything extraordinary that would require the Court to go above or below the sentencing guidelines as defined by the law, and a sentence today will be imposed within those guidelines.

RP (Sentencing Hr'g) at 55. The court determined that an exceptional sentence was not warranted.

The court was aware it had the discretion to run the sentences concurrently and impose an exceptional downward sentence but, in its discretion, determined that there were no circumstances justifying the exceptional sentence. The trial court did not abuse its discretion.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

13