# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50415-4-II |
| Respondent, | |
| v. | |
| ROBERT DESHAWN GROTT, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Robert Grott guilty of second degree murder of Julian Thomas and seven counts of first degree assault.  Grott appeals, arguing that the trial court erred by giving a first aggressor jury instruction and that the State failed to present sufficient evidence of the crimes.[1]

We hold that that the trial court improperly instructed the jury on first aggressor and that sufficient evidence supported the convictions; we do not address Grott's remaining arguments. We reverse and remand.

## FACTS

### A.     BACKGROUND

Grott enlisted in the Marines and deployed to Afghanistan.  In 2012, after leaving the Marines with an honorable discharge, he returned home to California.  Grott's family reported that he had changed after being in Afghanistan.

---

[1] In his brief and his Statement of Additional Grounds (SAG) for Review, Grott makes multiple additional arguments concerning evidentiary rulings, jury instructions, prosecutorial misconduct and ineffective assistance of counsel.

Sometime in 2015, after experiencing traumatic experiences in California, Grott moved to Tacoma and lived with his brother and two cousins. Grott's cousins were friends with Thomas, and Thomas would spend time at Grott's house. In August 2015, Grott's handgun was stolen. Grott believed that Thomas had stolen it.

October 31, 2015, Grott had an argument, which ended with Thomas shooting Grott's front door, nearly hitting Grott in the head. Thomas continued threatening to kill Grott in the subsequent months. After the October 2015 shooting, Grott experienced a significant increase in anxiety and vigilance, often inspecting his house for potential threats. He also started carrying a gun. Grott became isolated and paranoid. Grott confided in a family member that he was hurting and afraid of someone, and that his life was in danger.

B.      THE SHOOTING

On February 1, 2016, Grott rode his skateboard past an AM/PM gas station. There were several people in the parking lot and in the convenience store associated with the gas station. From the street, Grott saw Thomas parked in the AM/PM parking lot. Thomas was in his car talking to Petra Smith. Grott began firing his weapon toward Thomas, and continued to fire as he walked closer. Grott fired 48 rounds, killing Thomas who was facing Grott at the time of the shooting. In the course of the shooting, bullets from Grott's gun shattered the window of the AM/PM store. Thomas died at the scene; no one else was injured. A firearm was found under Thomas's body.

After the shooting, Grott returned to his home. Shortly after, Grott's uncle informed him that Grott was being threatened, and Grott and his brother drove to California where Grott turned himself in.

The State charged Grott with first degree murder of Thomas, and seven counts of first degree assault of the bystanders of the shooting, namely Smith, Tannisha McCollum, Jeanette Basher, Robin Lyons, Shawn Chargualaf, Debora Green, and Karmanita Vaca.

C.      TRIAL

At trial, Grott presented two affirmative defenses: diminished capacity based on PTSD (post-traumatic stress syndrome) and self-defense. Grott presented Dr. Kevin Moore to testify as an expert in support of his diminished capacity defense.

Dr. Moore is a psychiatrist, retired from the military. He had several years' experience treating marines and combat veterans. Dr. Moore examined Grott, who made statements about the incident to Dr. Moore. Dr. Moore diagnosed Grott with PTSD.

1. *Testimony*

Dr. Moore testified that he and Grott discussed Grott's childhood, military service, experiences after the military, issues with Thomas, the incident on October 31, 2015, the events between October 31, 2015 and February 1, 2016, and the incident on February 1. Dr. Moore testified that PTSD would likely result in someone over-perceiving or focusing on potential threats in the environment, affecting how they interpret others' actions. When asked about Grott's understanding of the risk of harm on February 1, Dr. Moore testified, "I don't think that Mr. Grott felt that he had any other alternative but to defend himself." 15 Verbatim Report of Proceedings (VRP) at 1964. Dr. Moore also testified that Grott's ability to premeditate was impaired.

Grott did not testify. The parties presented over thirty witnesses, who testified about the shooting, the subsequent investigation, and Grott's history. Except for Vaca, each alleged victim of first degree assault testified.

Grott's cousin testified that he had spoken with Thomas, who said, "When he sees [Grott], it's either [Grott] or me." 14 VRP at 1842. Grott's cousin testified that before the shooting, he had conveyed Thomas's threat to Grott. He also testified that he took Thomas's threat seriously because he knew Thomas's reputation, and that "[Thomas] is gang-affiliated, and I know exactly what [he] does." 14 VRP at 1842. Grott's cousin reported being "very afraid" for Grott.

2. *Jury Instructions*

The jury was instructed on first degree murder and the lesser included offense of second degree murder. The trial court also instructed the jury on assault, including the common law definition of assault.

Grott requested that the jury be instructed on self-defense; the State objected. The trial court ruled that Grott was entitled to self-defense instructions, and instructed the jury on self-defense related to the murder and assault charges.

The State proposed, and the trial court gave, a first aggressor instruction. The trial court instructed the jury that:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense to murder, manslaughter or assault.

CP at 1035. Grott did not object to this instruction.

4

The jury found Grott guilty of second degree murder and seven counts of first degree assault while armed with a firearm. Grott appeals.

## ANALYSIS

### A. FIRST AGGRESSOR INSTRUCTION

Grott argues that the trial court erred by giving a first aggressor instruction. The State argues that the first aggressor instruction was proper because Grott fired the first shot and that it was not required to demonstrate intentional provoking conduct prior to the shooting. We agree with Grott.

#### 1. *Issue Preserved for Review*

As an initial matter, Grott failed to object to the first aggressor instruction in the trial court. To raise this issue for the first time on appeal, Grott must show that giving the instruction constitutes a manifest error affecting a constitutional right. RAP 2.5(a)(3). Grott has made this showing.

Due process requires the State to prove every element of the charged offense beyond a reasonable doubt. *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). Once raised by a defendant, the absence of self-defense becomes an element of the crime that State has the burden of proving beyond a reasonable doubt. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). A first aggressor instruction informs the jury that if it determined Grott was the first aggressor, then his self-defense claim is unavailable and the jury does not have to consider whether the State has proved beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Bea*, 162 Wn. App. 570,

575-76, 254 P.3d 948, *review denied*, 173 Wn.2d 1003 (2011). Therefore, the first aggressor instruction implicates a defendant's constitutional rights.

We presume that an error of constitutional magnitude is prejudicial, and the State bears the burden of proving that the error was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). The error is harmless if this court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *Guloy*, 104 Wn.2d at 425. Because this claim is of constitutional magnitude, we consider it for the first time on appeal.

2. *Legal Principles*

We review de novo whether sufficient evidence supports the first aggressor instruction. *Bea*, 162 Wn. App. 577. We determine whether the evidence at trial was sufficient to support the giving of an instruction, viewing the evidence in the light most favorable to the party that requested the instruction. *Bea*, 162 Wn. App. at 577.

One who provokes a fight cannot invoke the right of self-defense. *Bea*, 162 Wn. App. at 575. A first aggressor instruction directs the jury to determine whether the defendant's acts precipitated a confrontation with the victim. *State v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999). Because a first aggressor instruction potentially removes self-defense from the jury's consideration, and relieves the State of its burden of proving that a defendant did not act in self-defense, the instruction should be given only sparingly. *Bea*, 162 Wn. App. at 575-76.

A first aggressor instruction is appropriate when the record demonstrates credible evidence to allow a jury to reasonably determine that the defendant provoked the need to act in self-defense. *Riley*, 137 Wn.2d at 909-10. The first provoking act must be intentional, and must

be an act that a "'jury could reasonably assume would provoke a belligerent response by the victim.'" *Bea*, 162 Wn. App. at 577 (internal quotation marks omitted) (quoting *State v. Wasson*, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989)). The provoking act "must be related to the eventual assault as to which self-defense is claimed." *Bea*, 162 Wn. App. at 577. The provoking act cannot be mere words alone, and it cannot be the actual charged incident to which self-defense is claimed. *State v. Sullivan*, 196 Wn. App. 277, 290, 383 P.3d 574 (2016), *review denied*, 187 Wn.2d 1023, 390 P.3d 332 (2017); *Bea*, 162 Wn. App. at 577. It is improper to give a first aggressor instruction where there is no evidence that the defendant "initiated any act toward [the victim] until the final assault." *Wasson*, 54 Wn. App. at 159.

### 3. *No Evidence of Provoking Act*

Grott was charged with first degree murder, and seven counts of first degree assault. He asserted that he was acting in self-defense. The trial court ruled that Grott was entitled to a jury instruction on self-defense. In order to issue a first aggressor jury instruction, the State was required to produce *some* evidence that Grott made an intentional act—*prior to the shooting*—that a jury could reasonably assume would provoke a belligerent response from the victim. *See Sullivan*, 196 Wn. App. at 290; *Bea*, 162 Wn. App. at 577; *Wasson*, 54 Wn. App. at 159. There is no evidence in the record of an intentional act that preceded the shooting, which a jury could reasonably assume would provoke a belligerent response.

The State argues that the first aggressor instruction was proper because Grott fired the first shot. This argument fails because the State concedes that the first shot is part of the actual charged incident to which self-defense is claimed. To support a first aggressor instruction the evidence would have to show that Grott made an intentional act *before* the shooting that a jury

7

could reasonably assume would provoke a belligerent response. *Bea*, 162 Wn. App. at 577. The evidence makes no such showing.

The State also argues that it was not required to demonstrate intentional provoking conduct prior to the shooting. But this contention is unsupported by the law. As discussed above, the provoking act cannot be the charged assault. *Sullivan*, 196 Wn. App. at 290; *Bea*, 162 Wn. App. at 577; *Wasson*, 54 Wn. App. at 159.

Because there is no evidence that Grott made an intentional act *before* the shooting that a jury could reasonably assume would provoke a belligerent response, we hold that the first aggressor instruction was improper. And because the instruction relieved the State of its burden to prove that Grott did not act in self-defense beyond a reasonable doubt, we presume that the error was prejudicial. Thus, the State has the burden to demonstrate that the improper instruction was harmless beyond a reasonable doubt. *State v. Imokawa*, 4 Wn. App.2d 545, 559, 422 P.3d 502 (2018); *Guloy*, 104 Wn.2d at 425.

4. *Error Not Harmless Beyond a Reasonable Doubt*

The State's only argument that any error was harmless is that the trial court should not have allowed self-defense in this case. Because the defense itself was improper, the argument goes, the negation of the defense was harmless. We disagree.

Grott's self-defense theory was that he perceived an imminent threat to his life when he encountered Thomas unexpectedly. His perception was based on his knowledge of Thomas and his prior experiences with Thomas and were influenced by PTSD. The trial court, after considering all the evidence in the light most favorable to Grott, ruled that Grott could argue self-defense. The State did not cross-appeal on this issue.

8

The State has not demonstrated that the improper instruction was harmless beyond a reasonable doubt. The first aggressor instruction allowed the jury to improperly find that Grott was the first aggressor based on the very act of shooting, which was the crime for which he claimed self-defense. And by doing so, the first aggressor instruction relieved the State of proving beyond a reasonable doubt that Grott was not acting in self-defense. Under the record here, we cannot determine that the error was harmless beyond a reasonable doubt. Accordingly, we reverse Grott's convictions.

B.     SUFFICIENT EVIDENCE OF SECOND DEGREE MURDER AND ASSAULT[2]

Grott argues that the State failed to present sufficient evidence of second degree murder and first degree assault.[3] Specifically, Grott argues that the State failed to present sufficient evidence of the actus reus of the crimes. Grott's argument fails.

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *Johnson*, 188 Wn.2d at 750. We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *Johnson*, 188 Wn.2d at 750-51. In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it.

---

[2] Although we reverse Grott's convictions, we address sufficiency of the evidence because if the evidence is insufficient to support the convictions, the double jeopardy clause prohibits a retrial. *State v. Wright*, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009).

[3] Grott's assignments of error also include: "The state failed to disprove beyond a reasonable doubt, self-defense" and "[t]he state failed to disprove beyond a reasonable doubt, justifiable homicide." Br. of Appellant at 1 (Assignments of Error 5, 6). Grott does not offer argument regarding either assignment of error, and therefore we do not address them. RAP 10.3(a)(6); *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

*State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We also "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *Thomas*, 150 Wn.2d at 874-75.

      1. *The Actus Reus Is Not an Element*

Grott argues that the State failed to prove the actus reus of both second degree murder and first degree assault. Grott invites this court to hold, contrary to established law, that the State is required to prove the actus reus as an element of the crime. Grott's claim fails under *State v. Deer*, 175 Wn.2d 725, 287 P.3d 539 (2012). *Deer* held that the State is not required to prove the actus reus or a volitional act as an element of the crime. *Deer*, 175 Wn.2d at 738, 741.

Grott relies on *State v. Eaton*, 168 Wn.2d 476, 229 P.3d 704 (2010). But *Eaton* is distinguishable. *Eaton* held that a defendant could not be subject to a sentencing enhancement under RCW 9.94A.533(5) for possession of a controlled substance inside of a jail when the police officers had transported Eaton involuntarily to the jail. *Eaton*, 168 Wn.2d at 479, 487. "The concern in *Eaton* was the absurdity of interpreting [the sentencing statute] to impose liability for a circumstance within the State's control, rather than the defendant's." *Deer*, 175 Wn.2d at 739. *Eaton* does not hold that the State is required to prove the actus reus as an element of the crime, and does not support Grott's argument. *See Deer*, 175 Wn.2d at 738 (rejecting the Court of Appeals' reliance on *Eaton* to hold that the State was required to disprove the voluntariness of the act). Because the State is not required to prove a volitional act as an element of the crime, Grott's argument fails.

   2.  *Grott's Alternative Argument That the Evidence Supports Only Second Degree
       Assault*

Grott argues in the alternative that the evidence does not support first degree assault. Specifically, he "submits that the facts in this case represent more closely assault in the second degree." Br. of Appellant at 48. Grott reasons that the facts in his case are similar to the facts in *State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007), where the jury found the defendant guilty of second degree assault, not first degree assault. But here, the jury found Grott guilty of first degree assault. The jury's verdict in *Smith* does not render the jury's verdict here unsupported by sufficient evidence.

Grott also asserts that the State "did not present sufficient evidence to establish beyond a reasonable doubt that Vaca experienced reasonable fear."[4] Br. of Appellant at 49. Grott's only argument in this regard appears to be that Vaca did not testify.

Debora Green, the store manager at the time of the shooting, testified that Vaca worked at the AM/PM and was behind the cash register at the time of the shooting. The State presented video footage from the AM/PM security cameras.[5] The State contends that the video footage demonstrates Vaca's apprehension of harm. The State describes the video as showing Vaca "taking all types of actions consistent with concern for her safety, including ducking to the ground, taking cover. At one point . . . she runs to the back of the store to try and protect herself." 14 VRP at 1742. Grott does not provide meaningful argument, authority, or citation to

---

[4] Count VIII was first degree assault of Karmenita Vaca.

[5] Exhibit 137 is a video included in this court's record, but because of the proprietary software needed to view it, the video was unviewable in the form submitted. Thus, we rely on the parties' descriptions.

the record to support his argument that the State failed to prove that Vaca experienced fear. Taking the evidence in the light most favorable to the State, the jury could have found that Vaca experienced reasonable fear.

We hold that the improper first aggressor instruction relieved the State of its burden to prove beyond a reasonable doubt that Grott did not act in self-defense, and we reverse his convictions and remand for further proceedings consistent with this opinion.[6]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Melnick, J.

_____
Sutton, J.

---

[6] Because we reverse on other grounds, we do not address Grott's remaining arguments.