**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79266-1-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| JEREMY STACK, | |
| Appellant. | |

LEACH, J. — Jeremy Stack appeals his conviction for one count of assault in the second degree, one count of assault in the second degree with a deadly weapon, and one count of reckless endangerment. He claims the trial court should have removed one juror for bias, and that it improperly commented on the evidence by referring to the event giving rise to his charges as "the scene of the crime". He also claims the evidence did not support giving a first aggressor instruction. Finally, he claims the trial court should not have allowed expert testimony about batons, and that the prosecutor made improper comments during closing statements.

The trial court did not err in failing to remove a juror or by giving the first aggressor instruction. Assuming, without deciding, that the judge's comments were error, any error was harmless. Finally, the trial court did not abuse its discretion by allowing expert testimony about batons. And, Stack fails to show that the prosecutor made any improper comments. We affirm.

Citations and pincites are based on the Westlaw online version of the cited material.

**FACTS**

Jeremy Stack, a taxi driver for the Everett Cab Company, arrived at Walmart to drive home Ashley Seabolt, Amanda Albrightson, and Albrightson's two children M.X.A. and M.M.A. M.X.A. was 16-months-old and M.M.A. was four-years-old. Stack began the fare meter as the passengers were putting their groceries and a stroller into the back of the taxi before they fully got into the vehicle. This concerned them. Albrightson asked Stack if $8 would be enough for the ride and Stack responded, "we'll see." Albrightson then asked Stack if he could take a shortcut behind a shopping mall to bypass traffic, which he refused.

Stack then pulled into a center turn lane and yelled at the passengers to "get the fuck out." At some point, while Albrightson got out and walked to the back of the van to get her things, Seabolt hit Stack in the face. His glasses broke during the altercation. He also had a small abrasion next to his right eye, which the on-scene officer noticed on arrival.

M.M.A. ran out of the van and into the street. Albrightson heard a vehicle brake, and saw M.M.A. five feet in front of a braking school bus in the middle of the road. She then saw Stack get out of the car with a metal baton and approach Seabolt as she was getting out of the van while holding M.X.A. Stack had to walk around Albrightson to reach Seabolt. Stack began hitting Seabolt while she was covering M.X.A.'s head. Albrightson ran toward them and pulled Stack off of Seabolt by grabbing and pushing him away. Stack then began hitting Albrightson with the baton on her head and face.

The State charged Stack with two counts of assault in the second degree with a

2

deadly weapon. At trial, Stack testified that Seabolt punched him with a toy in his eye and on the back of his head, face, and forehead. He stated that she hit him in the face, left the van, got back into the van, and then continued to hit him. At that point, he grabbed his baton and got out of the van to see where the kids were so he could leave. He could not see clearly because Seabolt knocked his glasses off in the van. Seabolt balled up her fist to hit him, so he used force to push her away from him. Albrightson then slammed into him from behind and he struck her with the baton.

Stack's first trial resulted in a hung jury on the assault counts, but the jury convicted Stack of reckless endangerment of M.M.A and found him not guilty of reckless endangerment of M.X.A. The second trial resulted in a mistrial due to a witness medical emergency during testimony. After the third trial, the jury found Stack guilty of second degree assault against Seabolt, and second degree assault with a deadly weapon against Albrightson. Stack appeals.

**ANALYSIS**

Juror Misconduct

Stack claims that the trial court should have removed a juror because the juror expressed bias and failed to follow the court's instructions.

An appellate court reviews a trial court decision about dismissing a juror for abuse of discretion.[1] A court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[2] In assessing alleged

---

[1] State v. Depaz, 165 Wn.2d 842, 858, 204 P.3d 217 (2009).
[2] Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 203-04, 75 P.3d 944 (2003) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

juror misconduct, the trial judge necessarily acts as "both an observer and decision maker."[3] Because such "'fact-finding discretion'" allows the judge to weigh the credibility of jurors, we accord the trial court's decision with substantial deference.[4]

During the first trial, Juror 9 expressed concern that Stack was using his cell phone and could take his picture. He stated he did not think Stack was doing anything wrong but just wanted to know if the court permitted Stack's cell phone use. The trial court denied Stack's request to strike Juror 9. Stack claims Juror 9's conduct shows that Juror 9 could not presume him innocent and inferred Juror 9's bias against him.

Stack also claims the trial court erred in denying his motion to strike Juror 9 a second time, because Juror 9 asked the law clerk if the jury would receive a transcript of the trial testimony instead of writing and submitting the question to the presiding juror as instructed. Stack claims this shows Juror 9 could not follow the court's instructions including an inability to presume Stack innocent.

When the court questioned Juror 9 about his concerns involving Stack's cell phone use, Juror 9 indicated that he presumed Stack innocent and did not think Stack was doing anything wrong, and he just wanted to know if he was allowed to use the cell phone. None of the concerns or answers show an inability to presume Stack innocent.

Also, Juror 9 followed all the proper court directions, and his question about the transcripts does not show that he was unfit to serve in the case. Juror 9's question was for clarification purposes, it did not show the juror was unable to follow court procedures,

---

[3] State v. Jorden, 103 Wn. App. 221, 229, 11 P.3d 866 (2000).
[4] Jorden, 103 Wn. App. at 229 (quoting Ottis v. Stevenson–Carson Sch. Dist. No. 303, 61 Wn. App. 747, 753, 812 P.2d 133 (1991)).

and it had no effect on the trial. The trial court did not abuse its discretion by refusing to remove Juror 9.

Improper Comment on Evidence

Stack claims the trial court improperly commented on evidence by telling the jury twice that they could not go to the scene of the crime during trial.

Article IV, section 16 of the Washington State Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This prohibits a judge from "conveying to the jury his or her personal attitudes toward the merits of the case."[5]

During the first trial, the judge instructed the jurors:

As a Juror, do not seek out evidence on your own. Do not inspect the scene of an event involved in the case as conditions may not be the same. You're Jurors, not detectives. Don't go to the scene of the crime, as they say. Just don't do it.

The court again instructed the jury after the first day of testimony:

Other than that, you've heard a lot of testimony. So please don't go looking around, poking around 7th Avenue and Wal-Mart. Don't go to the scene of the crime. Don't be checking your internet or cellphones or tablets or anything like that. Don't be reading the newspapers about this case or anything online about this case. It's very important since we've heard a lot of testimony that you adhere to those things.

Stack claims these comments were improper because they indicate that Stack committed a crime, and whether a crime had occurred was a disputed issue.

Assuming, without deciding, that the judge's instructions commented on evidence, any error was harmless.

---

[5] State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997).

A constitutional error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error.[6] If the evidence untainted by the error is so overwhelming that it necessarily leads to a finding of guilt, an appellate court will affirm the conviction.[7]

Having reviewed the record, we are convinced beyond a reasonable doubt that the judge's challenged instructions could not have changed the jury's verdict. The statement "the scene of the crime" occurred during the first trial, which resulted in a hung jury on the assault charges and a conviction for reckless endangerment. So, we need to consider only whether the comments affected his reckless endangerment conviction.

To convict Stack of reckless endangerment, the State had to prove that "Mr. Stack knew of and disregarded a considerable risk—not a certainty—of death or serious physical pain or injury to M.M.A. and M.X.A. and that his behavior constituted a gross deviation from how a reasonable person would have acted based on the known facts."

Here, despite the availability of nearby parking lots, Stack stopped his van in the middle of a busy street and instructed all the passengers, including 16-month-old M.X.A. and four-year-old M.M.A., to "get the fuck out." Stack knew the passengers had possessions in the back of the vehicle including a stroller. After Stack pulled over and instructed the passengers to get out, M.M.A. ran into the street and a bus almost hit her. Any reasonable person would know that ordering young children and adults to get out in

---

[6] State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).
[7] Guloy, 104 Wn.2d at 425.

the middle of a busy street would create a considerable risk of death or serious physical injury.

The overwhelming evidence, without the judge's comments, necessarily leads to a finding beyond a reasonable doubt that Stack knew of and disregarded a considerable risk that his actions could have seriously injured or killed M.M.A. Any error was harmless.

First Aggressor Instruction

Stack next challenges the trial court's decision to give a first aggressor instruction. Stack claims the record includes no evidence of an intentional act by him reasonably likely to provoke a belligerent response and create the necessity to act in self-defense.

We review de novo whether sufficient evidence supports a trial court's decision to give a first aggressor instruction.[8]

The first aggressor instruction reflects the general principal that a defendant may not invoke the right to defend himself when he provoked the altercation.[9] It is appropriate where a defendant invokes the right to self-defense and there is credible evidence from which a jury can reasonably determine that the defendant created the need to defend himself.[10] The party requesting the instruction, here the State, must produce credible evidence to warrant it.[11] On appellate review, this court considers the evidence in the light most favorable to the requesting party.[12] Most cases involve complicated facts making the use of bright line rules inappropriate.[13]

---

[8] State v. Bea, 162 Wn. App. 570, 577, 254 P.3d 948 (2011).
[9] State v. Riley, 137 Wn.2d 904, 912, 976 P.2d 624 (1999).
[10] Riley, 137 Wn.2d at 909-10.
[11] State v. Richmond, 3 Wn. App. 2d 423, 432-33, 415 P.3d 1208 (2018).
[12] Bea, 162 Wn. App. at 577.
[13] State v. Grott, 458 P.3d 750, 758 (2020).

A court properly instructs the jury about a first aggressor where "'(1) the jury can reasonably determine from the evidence that the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon.'"[14] The provoking act, because words alone will not suffice, must be both predicate and related to the charged crime.[15] Also, the provoking act must be intentional and one that a "jury could reasonably assume would provoke a belligerent response by the victim."[16] The unlawful act creating the provocation need not be the actual striking of a first blow.[17] (W)here there is evidence that the defendant engaged in a course of aggressive conduct, rather than a single aggressive act, "the provoking act *can* be part of a 'single course of conduct.'"[18]

Courts should be careful about giving a first aggressor instruction.[19] But, courts do not err in giving the instruction when there is credible evidence warranting it.[20]

Here, the first aggressor instruction read:

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and

---

[14] Richmond, 3 Wn. App. 2d at 432 (quoting State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008)), review denied, 191 Wn.2d 1009, 424 P.3d 1223 (2018).

[15] State v. Sullivan, 196 Wn. App. 277, 383 P.3d 574 (2016) (quoting State v. Wasson, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989).

[16] State v. Wasson, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989) (quoting State v. Arthur, 42 Wn. App. 120, 124, 708 P.2d 1230 (1985), review denied, 113 Wn.2d 1014, 779 P.2d 731 (1989).

[17] State v. Hawkins, 89 Wash. 449, 154 P. 827 (1916).

[18] State v. Grott, 458 P.3d at 758 (quoting State v. Sullivan, 196 Wn. App. 277, 383 P.3d 574 (2016)).

[19] Riley, 137 Wn.2d at 910.

[20] State v. Hughes, 106 Wn.2d 176, 192, 721 P.2d 902 (1986); State v. Heath, 35 Wn. App. 269, 271-72, 666 P.2d 922, review denied, 100 Wn.2d 1031 (1983).

thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. Words alone are not sufficient to qualify one as an aggressor.

Stack claims that it is not reasonably likely that "cutting a cab ride short and demanding customers vacate the cab would lead to assaultive conduct by those customers and thereby create the necessity to act in self-defense."

He explains how it was the assault on Stack, "rather than anything preceding it, that triggered the necessity of Stack's use of defensive force." But, the record contains sufficient evidence to allow a juror to find an aggressive course of conduct by Stack reasonably likely to provoke a belligerent response from the mothers of the young children riding in his taxi. Stack suddenly and unnecessarily demanded that these children leave the taxi in the middle of a busy street, exposing them to serious risk of harm. The trial court did not abuse its discretion by giving the first aggressor instruction.

Witness Testimony

Stack claims the trial court should not have allowed Everett Police Sergeant Jeff Pountain to testify about batons as a deadly weapon, because it was not relevant evidence.

We review a trial court's evidentiary ruling for abuse of discretion.[21] A court abuses its discretion "only if no reasonable person would have decided the matter as the trial court did."[22]

---

[21] State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002).
[22] State v. O'Connor, 155 Wn.2d 335, 351, 119 P.3d 806 (2005); Darden, 145 Wn.2d at 619 (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

The threshold to admit relevant evidence is very low.[23] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[24]

At the third trial, Pountain testified that Stack's collapsible metal baton was similar to batons issued to police officers. He told jurors that a strike to the head with a baton can cause significant bodily injury, fracture a skull, and it can cause death. Stack claims this testimony had no tendency to make the existence of any fact of consequence more or less probable, making it not relevant. But, the jury had to decide, as a matter of fact, whether the baton was a deadly weapon. So, Pountain's testimony regarding the baton's ability to be used as a deadly weapon, depending on where it is used on the body, was relevant to whether Stack used the baton as a deadly weapon. The trial court did not abuse its discretion in admitting the evidence.

Prosecutorial Misconduct

Stack next claims the prosecutor engaged in prosecutorial misconduct when he suggested that one of the witness's mistaken recollection of events could have resulted from the passage of time between the event and his testimony.

During closing arguments, the prosecutor made the following statement:

> But think about this. If Teddy Leavitt is wrong, how did he get it wrong? Which way did his mind's eye turn this situation in the nearly two years since it happened and he's thought about it from time to time? It turns it in the direction of starting with the truth of what he actually observed, a severe and a forceful and an unrebutted physical attack with a metal baton

---

[23] Darden, 145 Wn.2d at 621.
[24] ER 401.

on two women. And it was the force and the severity of what he did see that has him stating now all this time later that in his mind's eye it was more times than he could count. That's how those types of mistakes happen.

But, Stack provides no authority or explanation aside from stating that the prosecutor's statements regarding the passage of time is "improper."[25] He does not show that any prosecutorial misconduct occurred.

Statement of Additional Grounds

Stack claims a series of errors in his statement of additional grounds. He first claims an ethics violation and prosecutorial misconduct. He states, "a state prosecutor used witnesses, that he/she knew would lie on the stand and pergur [sic] themselves". He also claims the prosecutor misquoted the bible to strike any juror who "understood said scripture of the Jews," and because he is Jewish, he did not receive a fair trial. Stack further claims the prosecutor withheld evidence because there was missing glass and "the prosecutor knew Albrightson used a glass jar to cut herself."

Stack does not point to any evidence in the record supporting any of these claims. We will not consider these unsupported claims.[26]

He also states that prosecutorial misconduct occurred because a newspaper publicized this case. Stack does not provide any evidence that the prosecutor in this case had anything to do with the case appearing in the news.

---

[25] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).
[26] RAP 10.3(a)(6); Cowiche Canyon Conservancy, 118 Wn.2d at 809.

Stack next claims RCW 9A.16.020 allows any carrier of passengers to use force to expel passengers who refuse to obey a reasonable regulation for passenger conduct. This statute does not authorize criminal conduct.[27]

Stack next claims he should have been able to show that Albrightson and Seabolt were involved in a crime at the time of the event, because they were banned for life from Walmart yet shopped there that day. At trial, the judge ruled the trespass evidence irrelevant.

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion.[28] Discretion is abused "only if no reasonable person would have decided the matter as the trial court did."[29]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[30]

Here, the trespass evidence was not relevant. Any evidence that Seabolt or Albrightson trespassed earlier that day to purchase groceries has no tendency to make the existence of any fact that is of consequence in this case more or less probable. So, the court did not abuse its discretion in denying the evidence.

---

[27] "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

[28] Darden, 145 Wn.2d at 619.

[29] O'Connor, 155 Wn.2d at 351; Darden, 145 Wn.2d at 619 ("Abuse exists when the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" (quoting Powell, 126 Wn.2d at 258).

[30] ER 401.

Stack next claims a juror in the first trial was alone with the prosecutor during lunch. But, he provides no citation to the record nor points to any evidence of this.[31]

Stack also claims judicial misconduct occurred at the second trial. Because that trial ended in a mistrial, this claim is moot.

Stack also claims the judge colluded with the prosecutor because the judge and prosecutor changed his testimony from the first trial to "suit these needs to convict with misquotes and lies". But, Stack fails to cite to any evidence showing either the judge or prosecutor changed his testimony.[32]

Stack claims the jury was manipulated because Stack lost a nurse who had knowledge of bruising. He fails to cite to the record for this or further explain or assign any error here.

Finally, Stack claims the prosecutor led the witnesses to elude to things that did not happen and that did not match evidence. But, he fails to explain what the prosecutor eluded to.

**CONCLUSION**

We affirm. The trial court did not abuse its discretion in refusing to remove a juror. If the trial court erred in instructing the jury not to visit the scene of the crime, the error is harmless because even without the judge's comments, the jury would have still convicted

---

[31] RAP 10.3(a)(6).
[32] RAP 10.3(a)(6).

No. 79266-1-I/14

Stack of reckless endangerment. Finally, Pountain's testimony about the use of batons was relevant and no prosecutorial misconduct occurred.

_Leach, J._

WE CONCUR:

_Brennan, J_    _Verellen, J_

14